CITY OF EASTLAKE, APPELLEE, *v.* RUGGIERO, APPELLANT.

[Cite as City of Eastlake v. Ruggiero, 7 Ohio App. 2d 212.]

(No. 813—Decided September 7, 1966.)

Mr. *David P. Freed,* director of law, for appellee.
Mr. *Paul Mancino, Jr.,* for appellant.

LYNCH, J. This is an appeal on questions of law from a conviction of defendant in the Willoughby Municipal Court for a violation of Section 583.02 of the Codified Ordinances of the city of Eastlake, a curfew ordinance, which is set out as follows:

"It shall be unlawful for any child under the age of twelve (12) years to be upon the streets or sidewalks during the period from darkness to dawn, or for any child between the ages of twelve (12) and sixteen (16) years to be upon the streets or sidewalks between the hours of 11:00 o'clock p. m. and 6:00 a. m. or for any child between the ages of sixteen (16) years and eighteen (18) years to be upon the streets or sidewalks between the hours of 12:00 midnight and 6:00 o'clock a. m., unless accompanied by a parent, guardian or some responsible person over the age of twenty-one (21) years, or a member of his family eighteen (18) years or older or unless he has a legitimate excuse therefor. It shall also be unlawful for any parent or guardian of any child under the age of twelve (12) to allow such child to be upon the streets or sidewalks during the period from darkness to dawn, or for any parent or guardian of any child between the ages of twelve (12) and sixteen (16) years to allow such child to be upon the streets or sidewalks between the hours of 11:00 o'clock p. m. and 6:00 o'clock a. m., or for any parent or guardian of any child between the ages of sixteen (16) years and eighteen (18) years to allow such child to be upon the streets or sidewalks between the hours of 12:00 midnight and 6:00 o'clock a. m., unless accompanied by his parent, guardian or some responsible person over the age of twenty one (21) years or of a member of his family eighteen (18) years or older or unless such child has a legitimate excuse therefor. All times referred to herein are local time."

Defendant resides in Willowick, Ohio. However, at 3 a. m. on the morning of July 9, 1965, defendant's son, age 16, was

picked up by two police officers on the streets of the city of East-lake in the company of Jeffery Lash, a boy age fifteen. Defend-ant's son and Jeffery Lash were charged with breaking and entering into a gas station. One of the police officers telephoned defendant, who stated that he did not know where his son was at the time in question, but that he did not give his son any per-mission to be upon the streets at 3 a. m. in the morning.

Defendant testified that on the evening of July 8, 1965, he had given permission to his son to go to the Lash's residence to stay overnight; that his son left home about 9 p. m. with some extra clothing to stay overnight; that on numerous other occasions his son had stayed at the Lash's residence, and his son had also stayed overnight at other friends' homes; that he had never met Mrs. Lash, but that his wife knew Mrs. Lash; and that he went to bed about 11 p. m. without checking with Mrs. Lash to see whether his son actually arrived at her home.

Defendant's first assignment of error attacks the constitu-tionality of this ordinance on several grounds. His first ground is that a curfew ordinance is unconstitutional because it is un-duly restrictive of personal freedoms.

Despite the widespread prevalence of curfew ordinances, there is a surprising paucity of legal authority on this question. However, there is a carefully prepared and thorough article entitled "Curfew Ordinances and the Control of Nocturnal Ju-venile Crime" in 107 Pennsylvania Law Review 66 (1958), in which it is stated that curfew legislation aimed at juveniles received its first substantial support in this country in the lat-ter part of the nineteenth century. By the turn of the century approximately three thousand municipalities and villages had adopted such ordinances. Currently, some forty-eight cities with populations of over one hundred thousand have curfews aimed at minors, which are enforced, and nine others have such laws but admit that they do not enforce them. The National Institute of Municipal Law Officers has prepared a Model Cur-few Ordinance (Sections 7.401 and 7.402 of Model Ordinance Service). Oregon is the one state with an outright curfew law, although eleven other states have laws against vagrancy or loitering which to a great extent have the effects of cur-fews.

As to the constitutional validity of a curfew ordinance that

generally restricts minors from being on the public streets or sidewalks at night, no Ohio cases directly in point have come to our attention. However, there are a few cases in other jurisdictions with contradictory results.

Some curfew ordinances have been sustained as a reasonable exercise of the police power to protect the peace and good morals of the community. *Thistlewood* v. *Trial Magistrate for Ocean City* (1964), 236 Md. 548, 204 A. 2d 688; *People* v. *Walton* (1945), 70 Cal. App. 2d 862, 161 P. 2d 498. See *City of Portland* v. *Goodwin,* 187 Or. 409, 210 P. 2d 577, in which the constitutionality of a curfew ordinance applying to everybody, including adults, was upheld.

Other curfew ordinances have been held to be an unlawful exercise of the police power. *Alves* v. *Justice Court of Chico Judicial District* (1957), 148 Cal. App. 2d 419, 306 P. 2d 601; *Ex parte McCarver* (1898), 39 Tex. Cr. R. 448, 46 S. W. 936, 42 L. R. A. 587, 73 Am. St. Rep. 946.

It has been recognized that the activities and conduct of minor children under eighteen years may be regulated and restricted to a far greater extent than those of adults. *Thistlewood* v. *Trial Magistrate for Ocean City, supra; People* v. *Walton, supra.*

We feel that curfew ordinances for minors are justified as necessary police regulations to control the presence of juveniles in public places at nighttime with the attendant risk of mischief, and that such ordinances promote the safety and good order of the community by reducing the incidence of juvenile criminal activity.

We hold that a curfew ordinance that restricts minor children at nighttime can be constitutionally valid; however, a curfew ordinance must not exceed the bounds of reasonableness. *Thistlewood* v. *Trial Magistrate for Ocean City, supra.*

While Section 583.02 of the Codified Ordinances of the city of Eastlake restricts minors from being upon public streets or sidewalks during designated nighttime periods, the ordinance is not an absolute prohibition against minors being present upon the public streets or sidewalks during such nighttime periods. Exceptions are made if the minor is accompanied by his parent, guardian or responsible person over twenty-one years or a member of his family over eighteen years, or if the child

has a legitimate excuse. Thus, there is no curtailment of normal or necessary juvenile nighttime activities. Therefore, we hold that the part of this ordinance applying to minors is constitutionally valid.

Assuming that this ordinance is constitutional in its application to minors, defendant challenges the constitutionality of the provision which prohibits any parent or guardian of any child "to allow such child" to violate said ordinance.

Our research has again failed to produce any Ohio case directly in point on this question. The article in 107 Pennsylvania Law Review 66 at page 77 indicates that most curfew ordinances impose parental responsibility for compliance by their children with the curfew ordinance. The case of *People* v. *Walton, supra,* involved a parent who was charged with permitting his sixteen year old son to violate the curfew ordinance, and the constitutionality of the ordinance making this a violation was upheld.

The trial court upheld the constitutionality of the part of the ordinance pertaining to a parent or guardian, and cited as authority therefor Section 2151.411, Revised Code, which provides in part as follows:

"A parent or guardian having custody of a child is charged with the control of such child and shall have the power to exercise parental control and authority over such child. In any case where a child is found delinquent and placed on probation, if the court finds at the hearing that the parent having custody of such child has failed or neglected to subject him to reasonable parental control and authority, and that such failure or neglect is the proximate cause of the act or acts of the child upon which the finding of delinquency is based, the court may require such parent to enter into a recognizance with sufficient surety, in an amount of not more than five hundred dollars, conditioned upon the faithful discharge of the conditions of probation of such child. * * *."

A parent's rights in respect of the care and custody of his minor children are subject to control and regulation by the state by appropriate legislative or judicial action. 67 Corpus Juris Secundum 633, Parent and Child, Section 10. An example of statutes which impose parental responsibility are Sections 3321.04 and 3321.38, Revised Code, which require every parent

or guardian of any child between six and eighteen years to send such child to a school which conforms to the minimum standards prescribed by the state board of education; and if a person is convicted of violating this provision, he may be required to give a bond in the sum of one hundred dollars conditioned that he will comply with this law.

The parent of a child who repeatedly misses school without a legitimate excuse is charged by some Juvenile Courts with a violation of Section 2151.41, Revised Code, which provides in part as follows:

"No person shall * * * aid, abet, induce, cause, encourage, or contribute to the * * * delinquency of a child * * *, or act in a way tending to cause delinquency in such child. * * *."

Section 2151.02, Revised Code, defines "delinquent child" as including any child:

"(A) Who violates any law of this state, the United States, or any ordinance or regulation of a subdivision of the state, * * *."

The decisive issue in this phase of the case is the interpretation of the word "allow" as used in this ordinance.

The word "allow" has no rigid or precise meaning, but its import varies widely according to the circumstances or the context in connection with which it is used. *Dunlop Sand & Gravel Corp.* v. *Hospelhorn*, 172 Md. 279, at 289, 191 A. 701 at page 706.

The definition given in Webster's Third New International Dictionary for "allow" that appears applicable to this ordinance is "to permit by way of concession, to permit by neglecting to restrain or prevent."

To "allow" a thing to be done is to acquiesce in or tolerate; knowledge, express or implied, being essential. *McDiarmid* v. *Commonwealth*, 184 Va. 478, at 483, 35 S. E. 2d 813 at page 815; *Sawyer* v. *Mould*, 144 Iowa 185, at 186, 122 N. W. 813 at 814.

We hold that the word "allow" as used in this ordinance means either "permit" or "neglect to restrain or prevent." It requires actual or constructive knowledge on the part of the parent or guardian, that is, the parent or guardian must actually know about the child violating the curfew ordinance, or the circumstances must be such that a reasonably responsible parent should have known that the child was violating the curfew.

218

With this interpretation, we hold that the provision of Eastlake Ordinance No. 583.02 which prohibits any parent or guardian of any child to allow said child to violate said ordinance is constitutionally valid.

However, we also hold that the judgment of the trial court is against the manifest weight of the evidence.

The uncontradicted evidence was that defendant did not know that his son was violating the curfew ordinance until notified by one of the arresting officers, and there was no evidence in the record to indicate that defendant would have reason to know that his son was violating this curfew ordinance by having knowledge of prior incidents when his son was on public streets or sidewalks between 11 p. m. and 6 a. m. without a legitimate reason, or that defendant was completely indifferent to the activities or conduct of his son.

The judgment is reversed, final judgment is rendered for defendant, and defendant is ordered discharged.

*Judgment reversed.*

JOHNSON, P. J., and JONES, J., concur.