Obmaud N. Gale, J.
On August 17, 18 and 19, 1967, the Mayor of the City of Syracuse invoked powers vested in him by article 17 of chapter 16 of the Eevised General Ordinances of the City of Syracuse and imposed a curfew (under subdivision [d] of section 16-58 of the ordinance) to continue during certain specified periods. The defendants in the above-entitled action were arrested on the public streets of the City of Syracuse for violation of subdivision (d) of section 16-58: “ Curfew. No person shall enter or remain in any public street, park, square or building in any such part or parts of the city during the hours of the day as may be prescribed by the Mayor. ’ ’ Thereafter, each defendant brought a motion to dismiss the information laid against him, on grounds that the city ordinance was unconstitutional on its face in that:
“ (1) It is an unlawful delegation of legislative authority from the City Council to the Mayor,
“ (2) That the city has tried to legislate in an area which has been fully preempted by state law,
“ (3) That it denies the Defendants their constitutionally guaranteed liberties,
“ (4) It is overreaching and excessively broad and on the further ground that the ordinance is susceptible to arbitrary enforcement in violation of the Defendants’ constitutional rights.”
On April 17, 1968, Judge Joseph Falco of the City Court of Syracuse rendered a decision (56 Mise 2d 586) which granted the motion of the defendants to dismiss the charges against them, and held that subdivision (d) of section 16-58 entitled ‘ ‘ Curfews ’ ’ was invalid in its entirety. In addition, the court ruled by way of obiter dicta that subdivision (b) of section 16-58 entitled “ Weapons ”, insofar as it prohibited the carrying of weapons was also invalid, as was section 16-60: “ Penalty. A violation of any provision of this article shall be punishable by a fine not exceeding Five Hundred Dollars ($500.00) and not less than Twenty-Five Dollars ($25.00), or by imprisonment not exceeding one hundred eighty (180) days, or both such fine and imprisonment.”
*279 Following the entry of that order dismissing the information against the defendants, the People by Frank A. Gfualtieri, Jr., District Attorney, timely filed a notice of appeal.
Subsequent to that time, no action was taken until July 29, 1968, when a motion was brought in County Court on behalf of the defendant, John Lee Smith, to dismiss the appeal of the People for failure diligently to prosecute or properly to perfect the same. The defendants, Major Henry Kearse and Walter Moorer thereupon joined in the motion to dismiss, which was heard before this court on August 13, 1968. On that same date, the arguments on the merits of the appeal were heard by the court, over the objections of defendants’ counsel.
To dispose first of the merits of the argument on appeal, reference is made to the General Municipal Law (§ 209-m), as amended by the New York State Legislature, effective July 1, 1968:
“ 6. a. Notwithstanding any inconsistent provision of law, general or special, in the event of natural disaster, rioting, catastrophe, or similar public emergency within the territorial limits of any local government, or in the event of reasonable apprehension of immediate danger thereof, and upon a finding by the chief executive officer thereof that the public safety is imperiled thereby, such chief executive officer may proclaim a state of emergency within any part or all of the territorial limits of such local government. Following such proclamation and during the continuance of such state of emergency, the chief executive officer may promulgate the following orders to protect life and property or to bring the emergency situation under control. Such orders may, within any part or all of the territorial limits of such local government, provide for:
“ (1) the establishment of a curfew and the prohibition and control of pedestrian and vehicular traffic, except essential emergency vehicles and personnel; * * *
“ (5) the prohibition and control of the presence of persons on public streets and places; * * *
“ (6) The regulation and control of the possession, storage, display, sale transport and use of firearms, other dangerous weapons and ammunition; * * *
‘ ‘ 7 Any person who knowingly violates any order of a chief executive officer promulgated pursuant to subdivision six hereof is guilty of a class B misdemeanor.”
Those provisions in the 1967 special emergency law which were contested as being unconstitutional have been expressly validated by the State Legislature. Whether or not the defendants ’ rights would still be violated by the new legislation is not *280 now before us. To consider, then, the constitutional question, it appears from the record, the arguments and all the papers submitted on this matter, that the ruling of the lower court was correct. By its ruling the court is aware that individuals with asocial propensities may be released to society. However, they cannot be deemed law violators if the law itself is unconstitutional.
Although the opinion of the lower court reaches matters not before the court (i.e., the possession of firearms was not in question, nor was the matter of punishment at that stage, since the information was dismissed), it seems to this court that a broadly worded statute which prohibits absolutely the ‘ ‘ entering or remaining in any public street, park, square, or building ’ ’ is per se unenforcible as an absolute prohibition against all vehicular or pedestrian traffic. Emergency vehicles, police and firemen and bona fide residents would all be excluded. Since such a proscription could clearly not be expected to be enforced, the prohibition thereby mandates on the enforcers of the law the determination as to which citizens shall be permitted to enter and which shall be restricted. It further enjoins conduct. which, but for the determination of the arresting officer, would be entirely lawful.
In response to the excellent sociological brief submitted by the District Attorney stressing the emergency requiring the protection of the lives and property of the area’s citizens, the court calls attention to the article on “ Judicial Control of the Biot Curfew” appearing in the Yale Law Journal (77 Yale Law J. 1560, 1564):
‘ ‘ However useful the curfew may be, the cost of imposing it is high. * * * The curfew is a new rule of conduct, affecting the actions of people who would not violate any other law, as well as those who would * * * The extraordinarily wide and necessarily indiscriminate net cast by a curfew will sweep large numbers of people into jail; many of those arrested, particularly on the first night, will be innocent citizens who did not receive notice of the curfew. Many more innocent people will temporarily be deprived of their means of economic livelihood.
‘ ‘ Furthermore, by its restrictions on movement, a curfew severely affects the rights of entire neighborhoods to exercise the First Amendment freedoms of speech, assembly, and association. Being out of doors and free to move about are preconditions for the effective exercise of these rights. While the Supreme Court has not explicitly considered the right to free local movement, the harsh attitude which has been taken toward *281 ]catering and vagrancy statutes seems to reflect implicit recognition of its primacy.”
(At Footnote 22: “ The. concern primarily articulated by the Court in striking down such laws has been the possibility of arbitrary or discriminatory enforcement resulting from the broad discretion of law enforcement officers.) ” (See, also, Fenster v. Leary, 20 N Y 2d 309, 315.)
The United States Supreme Court, in Cox v. Louisiana (379 U. S. 536, 557-558) spoke to the problem of police interpretation of a statute: “ It is clearly unconstitutional to enable a public official * * * .to engage in invidious discrimination among persons or groups either by use of a statute providing a system of broad discretionary licensing power or, as in this case, the equivalent of such a system by selective enforcement of an extremely broad prohibitory statute.”
A comment from a recent decision of a Nassau County District Court (Burstein, J.), discussing another matter, is here pertinent and paraphrased: ‘ ‘ the court does not denigrate from the contributions made by the police and the enormous burdens imposed upon them in the detection and prevention of crime in these disoriented times. We must recognize, at the same time, that there are limits to the use of the police power and that crime detection must comply and conform with permissible constitutional sanctions. A frightened and impotent community cannot ask the police to perform illegal acts because the task of coping with (rioters) is beyond either their willingness or ability to realistically handle it.” (See, also, People v. Grogan, 260 N. Y. 138, 145.)
We are in complete agreement with Judge Keating’s statement, speaking of the obstruction of streets by protesters, in People v. Katz (21 N Y 2d 132, 135): “While we are in sympathy with the general purpose of the statute involved in this case, its susceptibility to arbitrary enforcement and its use of total prohibition rather than reasonable regulation render it unconstitutional.”
The second question before the court relates to the procedure used to bring the appeal to the County Court. On the defendants’ motion to dismiss the appeal of the People from the lower court ruling, for failure to prosecute at the next term of court, the District Attorney argued that the defendants ’ motion should fail because it was brought under the wrong statutes (including section 759 of the Code of Criminal Procedure specifying that an appeal must be brought to argument by a defendant at the next term of court). To support this argument, he cited article 20 of the Uniform City Court Act (UCCA) *282 dealing with criminal jurisdiction and procedure in the City Courts (§ 2018, subd. [a]): “If any judgment or determination of the court, whether it be in a criminal action or in a special proceeding of a criminal nature, shall he adverse to the defendant he may appeal therefrom in the same manner as from a judgment in an action prosecuted hy indictment * * *. If the judgment of the appellate court upon such an appeal shall be adverse to the defendant, or the people, appeal therefrom may be taken to the court of appeals as prescribed in the code of criminal procedure.” (Italics supplied.)
The argument was then made that, having been referred back to the appeals section of part IV of the Code of Criminal Procedure (Of the Proceedings in Criminal Actions Prosecuted by Indictment: tit. XI, ch. 1), the time limited for bringing on the argument of the appeal should be determined by section 535. This would have given the People “ ninety days after the last day in which a notice of appeal was required to be filed”. If this line of reasoning were correct, the argument of the District Attorney would be sound.
It is the defendants’ contention, however, that pursuant to section 2001 of the UCCA, each of the Judges of the court may sit as a Judge of the Courts of Special Sessions and that the procedure to be followed in taking an appeal is outlined in section 2006 of the same act: “ The practice and procedure when a judge of the court shall sit as a court of special sessions shall be regulated and controlled by the provisions of the code of criminal procedure not inconsistent with this act regulating and controlling the practice and procedure of the county court and of courts of special sessions in counties other than counties in the city of New York or, if such provisions differ in any matter or instance, hy the provisions of such code not inconsistent with this act regulating and controlling the practice and procedure of courts of special sessions in such counties.” (Italics supplied.)
This would clearly bring the appeal under the sections of the Code of Criminal Procedure, part V, titled “ Of Proceedings in Courts of Special Sessions and Police Courts ”, title III: “ Of Appeals from Courts of Special Sessions in the, Counties Other Than Those Within the City of New York ” and would require filing of an affidavit of errors. The sections of this title pertinent to this appeal are found in sections 749, 750, 751 and 759 of the Code of Criminal Procedure.
Those eases which have interpreted the pertinent sections of the code were decided prior to 1965, and have held that the *283 right of the People to appeal arose from the reference back to section 517 of the code, as stated in section 518:
‘1 An appeal may be taken by the people as of right in the following cases to the court to which an appeal would lie in the same action or proceeding from a judgment of conviction other than of death, as provided in section five hundred seventeen. * * *
‘ ‘ 3. From an order of the court, made at any stage of the action, setting aside or dismissing the indictment on a ground other than the insufficiency of the evidence adduced at the trial ”.
This subdivision was added to the Code of Criminal Procedure in 1926 and was last amended in 1942.
This court is of the opinion that the application of the TJCCA, as spelled out in article 23 of the act, takes precedence over prior procedural provisions relating to an appeal from a City Court outside New York City.
Since the interpretation of this provision seems to be a case of first impression, it may be useful to document the process by which the court arrived at this determination.
When the TJCCA took effect “ April first, nineteen hundred sixty-five” (UCCA, § 2301), it provided (§ 2300, subd. [g]): ‘ ‘ All provisions of the court acts or other laws regulating the jurisdiction, practice or procedure of the courts to which this act applies ” (excepting only money limits of civil jurisdiction) “ are hereby repealed.”
Clearly, it was not intended to repeal the Code of Criminal Procedure. However, there are numerous instances in article 20 (the article of the TJCCA dealing with criminal jurisdiction and procedure) where the Code of Criminal Procedure is incorporated by reference. As pointed out before, section 2001 gives to the City Court Judges jurisdiction to sit both as Magistrates and as Judges of Special Sessions; Special Sessions procedure as set forth in the code and not modified by the Uniform Act is prescribed by section 2006; and section 2018 provides for appeals to be taken from convictions as in crimes prosecuted by indictment.
It is the opinion of this court that section 2018 is decisive of the issue of this appeal; and it would seem that the procedure followed by the People in bringing this appeal was proper, if there can be found any provision for an initial appeal by the People.
The concept of an appeal to a higher court as such, was unknown at the common law, and is not a natural or inherent *284 right. (Croveno v. Atlantic Ave. R.R. Co., 150 N. Y. 225, 228.) Nor is it an essential element of due process. (People ex rel. Welch v. Bard, 209 N. Y. 304.) Further the right to appeal is a privilege granted by statute and procedural requirements must be strictly followed for the taking of such an appeal. (People v. Zerillo, 200 N. Y. 443, 446; People v. Evans, 18 A D 2d 1018, 1020; People v. Palmer, 5 Misc 2d 866.) An appeal is not a matter of constitutional right; and in criminal (and noncapital cases) appeal lies only by virtue of statutory authorization; such jurisdiction can never be assumed, unless the statute expressly authorizes its exercise. (Matter of Ryan [Hogan], 306 N. Y. 11,16.) In the absence of a statute authorizing appellant’s application to this court for relief, the appellate court has no authority to entertain such an appeal. (Matter of Richmond County Soc. for Prevention of Cruelty to Children, 11 A D 2d 236, 240, affd. 9 N Y 2d 913; cert. den. 368 U. S. 290.)
It seems to us that subdivision (a) of section 2018, by providing for appeals from City Courts, has, perhaps through an oversight of the drafting committee and the Legislature, eliminated the procedure for the People to bring an appeal in the first instance from a lower court, where the procedure is determined by the UCCA.
A general principle used in interpreting statutes (expressio unius est exclusio alterius) holds that the mention of one thing in a statute implies the exclusion of another. Thus, where a law expressly describes a particular person to whom it shall apply (in this case, “ the defendant ”), an irrefutable inference must be drawn that what is omitted was intended by the Legislature to be omitted. This maxim is not an iron-clad rule of law, but is an aid to ascertain the meaning of a statute. (56 N. Y. Jur., Statutes, §§ 126,127.) The inference is strengthened, in this case, by the provision in the third sentence of subdivision (a) of section 2018 of the UCCA for an appeal to be taken both by the defendant and by the People from the judgment of the Appellate Court. (See § 2018, subd. [a].)
Thus it would seem that appeals brought by the People from a judgment of the Appellate Court should follow the same procedure as is followed when appealing from a judgment of conviction after indictment. But we do not read into the law here questioned any provision for an initial appeal by the People.
Under the authority of section 2006 of the UCCA, pursuant to the quoted language, when a Judge sits as a Court of Special Sessions, the practice and procedure are controlled by the provisions of the Code of Criminal Procedure insofar as they *285 do not conflict with the Uniform Act. As indicated above, if the Legislature had intended to limit the new UCCA by the Code of Criminal Procedure, it should have so provided. Courts of Special Sessions in counties other than New York, governed as to appellate procedure by title III of part V of the Code of Criminal Procedure has taken care of the procedural lack of right of the People to appeal by reference back, in section 749, to title XI of part IV, which includes section 518 (quoted supra). The failure to make a similar provision in the UCCA argues against the People’s right to appeal in the instant case. Consequently, this court holds that as to the code provisions discussed herein, which appear to be inconsistent with the UCCA, the act controls.
Therefore, the motion of the defendants to dismiss the appeal is granted.
"While this is perhaps conclusive of the matter, the District Attorney did argue the case on the merits. Consequently, we have dealt also with the constitutionality of the law under which the defendants were arrested and have found that portion appealed from — subdivision (d) of section 16-58 — unconstitutional as violative of the defendants’ rights under the Fourteenth Amendment to equal protection of the laws.