[Civ. No. 30485. First Dist., Div. One. Nov. 15, 1972.]

In re NANCY C., A Person Coming Under the Juvenile Court Law.
HERSCH E. BAYES, as Chief Probation Officer,
Plaintiff and Respondent, v.
NANCY C., Defendant and Appellant.

748

COUNSEL

Paul Ligda, Public Defender, and Philip C. Bourdette, Deputy Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Eric Collins and Nancy S. Reller, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KONGSGAARD, J.*—This is an appeal from an order of the juvenile court continuing the minor as a ward of the juvenile court.

On June 22, 1971, a supplemental petition was filed in the Superior Court of Solano County, sitting as a juvenile court, alleging two violations of Welfare and Institutions Code section 602, by Nancy C., age 15. She was charged in count one with the failure to obey an order of the juvenile court by leaving her foster parents' home without their consent, and in count two with a violation of Health and Safety Code section 11530, possession of marijuana.

At the jurisdictional hearing the referee sustained the petition on both counts, ordered the minor continued as a ward of the juvenile court and committed the minor to the California Youth Authority.

Nancy C. first appeared before the Solano County Juvenile Court in 1969, when she was adjudged a ward of the court and placed in the home of an aunt. Subsequently, she was before the court several other times and continued as a ward of the court with placement in various foster homes. In April 1971, Nancy was placed in a foster home in Sacramento, California, where she remained until June 14 of that year.

On the evening of June 14 Nancy left the foster home and failed to return as directed. The foster parents did not see her again until after she was apprehended by Sacramento police officers five days later.

On June 19, 1971, at 10 p.m., two Sacramento police officers observed a female who appeared to be a minor walking east on S Street between 3d and 4th Streets. The area bounded by 3d and 5th, and S and

*Assigned by the Chairman of the Judicial Council.

T Streets was a high prostitution area. One of the officers suspected this person of being a prostitute and described her walk as "a prostitute stroll." The officers drove around the block, and stopped in the vicinity of 5th and R Streets at approximately 10:10 p.m. and questioned the minor. They ascertained that her name was Nancy C. and she was in fact under age. She indicated to the officers that she was coming from the River Club (which does not admit persons under 21), and that she had been staying with one Kathy Pittman, who was known to one officer as a prostitute. Finally, she said that she was on her way to the Greyhound Bus Depot to meet a friend.

The minor was arrested for violation of a Sacramento curfew ordinance, the terms of which are set forth below, and was booked at city jail. During the booking her purse was searched and a bag appearing to contain marijuana was discovered. It was stipulated that the bag did contain marijuana.

## Questions Presented

1. Was there probable cause to arrest for violation of the curfew ordinance?

2. Is the curfew ordinance unconstitutionally broad?

## I

Since the arrest was made without a warrant, the burden rests upon the prosecution to show proper justification for the arrest. (*Tompkins* v. *Superior Court* (1963) 59 Cal.2d 65, 67 [27 Cal.Rptr. 889, 378 P.2d 113]; *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23]; *People* v. *Waller* (1968) 260 Cal.App.2d 131, 137 [67 Cal.Rptr. 8]; *People* v. *Rodriguez* (1966) 242 Cal.App.2d 744, 747 [51 Cal.Rptr. 873].) That justification can be found in the existence of probable cause to make an arrest. The applicable principles governing the existence of probable cause were stated in *People* v. *Ingle* (1960) 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577], as follows: "Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. (*People* v. *Fischer*, 49 Cal.2d 442, 446 [317 P.2d 967]; *People* v. *Kilvington*, 104 Cal. 86, 92 [37 P. 799, 43 Am.St.Rep. 73]; *People* v. *Silvestri*, 150 Cal.App.2d 114, 117 [309 P.2d 871]; *People* v. *Soto*, 144 Cal.App.2d 294, 298 [301 P.2d 45]; *People* v. *Smith*, 141 Cal.App.2d 399, 402 [296 P.2d 913]; *People* v. *Rodriguez*, 140 Cal.App.2d 865, 869 [296 P.2d 38].)

■ Probable cause has also been defined as having more evidence for than against, supported by evidence which inclines the mind to believe, but leaves some room for doubt. (*People* v. *Nagle,* 25 Cal.2d 216, 222 [153 P.2d 344]; *People* v. *Novell,* 54 Cal.App.2d 621, 623-624 [129 P.2d 453]; *Ex parte Heacock,* 8 Cal.App. 420, 421 [97 P. 77].) It is not limited to evidence that would be admissible at the trial on the issue of guilt. (*People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535].) The test is not whether the evidence upon which the officer acts in making the arrest is sufficient to convict but only whether the person should stand trial. (*People* v. *Fischer, supra,* 49 Cal.2d 442, 446.)"

■ Even if probable cause for an arrest does not originally exist, it has long been recognized that circumstances short of probable cause to make an arrest may still justify an officer stopping pedestrians on the streets for questioning (*Cunha* v. *Superior Court* (1970) 2 Cal.3d 352, 355 [85 Cal.Rptr. 160, 466 P.2d 704]; *People* v. *Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]). In *People* v. *One 1960 Cadillac Coupe* (1964) 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706], it was stated: "[A] police officer . . . may detain and question a person when the circumstances are such as would indicate to a reasonable man in a like position that such a course is necessary to the proper discharge of [his] duties." If the investigation reveals probable cause, then the officer may arrest the suspect and conduct a reasonable search. (*People* v. *Mickelson, supra,* at pp. 450-451; *Irwin* v. *Superior Court* (1969) 1 Cal.3d 423, 426-427 [82 Cal.Rptr. 484, 462 P.2d 12]. See also *Pendergraft* v. *Superior Court* (1971) 15 Cal.App.3d 237, 242 [93 Cal.Rptr. 155].)

■ Clearly the officers upon seeing a young female engaged in a "prostitution stroll" after 10 p.m. on a public street in an area where prostitution abounds, had the right, indeed the duty, to detain and question her regarding her activities. The officers did not observe any acts of solicitation by the minor nor any act of prostitution and questioning her elicited no information concerning prostitution. There was, thus, no basis for further detention of the minor for any prostitution related crime.

■ However, following the initial questioning of the minor, the officers ascertained she was in fact under 18 years of age and was in ostensible violation of the curfew ordinance since it was after 10 p.m. The ordinance read as follows: "It is unlawful for any *minor* under the age of eighteen years to loiter, idle, wander, stroll or play in or upon the public streets, highways, roads, alleys, parks, playgrounds, or other public grounds, public places and public buildings, places of amusement and eating places, vacant lots or any unsupervised place between the hours of ten p.m. and

daylight immediately following; provided, however, that the provisions of this section do no apply when the minor is accompanied by his or her parents, guardian or other adult person having the care and custody of the minor, or when the minor is upon an emergency errand directed by his or her parent or guardian or other adult person having the care and custody of the minor or when the minor is returning directly home from a meeting, entertainment, recreational activity or dance. Each violation of the provisions of this section shall constitute a separate offense. (Ord. 355, § 1, 1949)." After further questioning revealed she was going to the Greyhound Bus Depot to meet a friend the officers placed her under arrest for violation of the Sacramento Curfew Ordinance.

The minor was unquestionably in violation of the ordinance unless she came within one of the three exceptions spelled out in the ordinance. The first exception does not assist the minor since it was obvious she was not accompanied by her parents or other person having her custody. The second and third exceptions relate to (a) the minor being on an emergency errand for a parent or one in custody or (b) the minor returning directly home from a meeting or recreational activity. From the answers given by the minor to the questions asked by the police it can be readily and reasonably inferred that she was not on an errand nor was she returning directly home from a recreational activity.

Under the totality of circumstances we hold that the officers could conscientiously entertain an honest and strong suspicion that the minor was in violation of the curfew ordinance. Accordingly the officers had probable cause to arrest the minor for a violation of the curfew ordinance and conduct the search incident to the arrest.

## II

We turn to a consideration of the constitutionality of the ordinance. Appellant contends that the ordinance violates article I, section 1, of the California Constitution and the Fourteenth Amendment of the United States Constitution in that it unreasonably interferes with the exercise of personal rights guaranteed by these provisions by being too broad and discriminatory. Respondent argues that the statute is not overly broad or discriminatory in that it proscribes "loitering" and not "presence"; it applies to juveniles and not adults; and contains reasonable exceptions.

Appellant agrees that the City of Sacramento had a right to pass a curfew ordinance, even one embodying severe restrictions, if an emergency was involved. (See *United States* v. *Chalk* (4th Cir. 1971) 441 F.2d 1277, 1280-1283; *Glover* v. *District of Columbia* (D.C. App. 1969) 250 A.2d 556, 560-

561; *Ervin* v. *State* (1968) 41 Wis.2d 194, 199-202 [163 N.W.2d 207, 210-211]; *Davis* v. *Justice Court* (1970) 10 Cal.App.3d 1002, 1007-1011 [89 Cal.Rptr. 409].) Moreover, appellant concedes that a municipal governing body has the power to pass a curfew law for the purpose of protecting juveniles or preventing delinquency.

■ The constitutional standard to be applied when an ordinance such as this is attacked as unduly restrictive of personal rights is one of "reasonableness." (*Alves* v. *Justice Court* (1957) 148 Cal.App.2d 419, 423-424 [306 P.2d 601].) In *Alves* the court stated at page 422: "The rule is too well established to warrant citation of authority that a municipality, under its inherent police power, may enact legislation which may interfere with the personal liberties of its citizens and impose penalties for the violation thereof where the general welfare, public health and safety demand such enactment; but this rule is always subject to the rule of reasonableness in relation to the objects to be attained."

The question then is whether the ordinance in question was reasonable, in view of the needs of the state, with reasonableness being roughly measured by the gravity of the evil to be corrected and the importance of the right invaded. (See Note, *Curfew Ordinances and the Control of Nocturnal Juvenile Crime* (1958) 107 U.Pa.L.Rev. 66, 97.) Expressed another way, "the measure so adopted must have some relation to the ends thus specified." (*In re Hall* (1920) 50 Cal.App. 786, 789 [195 P. 975].) The court in *Thistlewood* v. *Ocean City* (1964) 236 Md. 548, 556 [204 A.2d 688, 693] suggested the following test: "(1) Is there an evil? (2) Do the means selected to curb the evil have a real and substantial relation to the result sought? (3) If the answer to the first two inquiries is yes, do the means availed of unduly infringe or oppress fundamental rights of those whose activities or conduct is curbed?"

Commentators have suggested that "the interest of children in being abroad during the night hours is not nearly so important to the social, economic and healthful well-being of the community," as the free movement of adults. (*Curfew Ordinances and the Control of Nocturnal Juvenile Crime, supra,* 107 U.Pa.L.Rev. 66, 99.) ■ In addition, the community has a special interest in "the protection of children of immature years." (*In re Weber* (1906) 149 Cal. 392, 395 [86 P. 809].) Furthermore, the community has an interest in the reduction of juvenile nocturnal crime. Thus "curfew ordinances for minors are justified as necessary police regulations to control the presence of juveniles in public places at nighttime with the attendant risk of mischief, and . . . such ordinances promote the safety and good order of the community by reducing the incidence of juvenile criminal activity." (*City of Eastlake* v.

*Ruggiero* (1966) 7 Ohio App.2d 212 [36 Ohio Ops.2d 345, 220 N.E.2d 126 at p. 128].) The question to be answered in view of these interests is whether the means used, as measured by the words of the ordinance, are so broad as to be unreasonable. Although the word "loitering" as used in a criminal statute has been held to connote a sinister or wrongful purpose (*In re Cregler,* 56 Cal.2d 308 [14 Cal.Rptr. 289, 363 P.2d 305]; *People* v. *Caylor,* 6 Cal.App.3d 51 [85 Cal.Rptr. 497]) it is obvious that the words "loiter, wander and idle" are not used in the Sacramento Curfew Ordinance in this restrictive, sinister sense. This is clear because the conduct described by these words used in their sinister sense is already proscribed by Penal Code section 647, subdivision (e). Furthermore, the words "stroll or play" do not have any sinister connotations, and their juxtaposition to the words "loiter, idle, wander" clearly connotes an innocent purpose.

Since these words are used in their broad everyday meaning, respondent concedes that if this ordinance were a loitering ordinance, applicable to *all* persons it might be unreasonable. (Italics added.) (*Seattle* v. *Drew* (1967) 70 Wn.2d 405 [423 P.2d 522, 25 A.L.R.3d 827];[1] *Territory of Hawaii* v. *Anduha* (9th Cir. 1931) 48 F.2d 171.)[2]

Curfew statutes can be classified into two groups according to the conduct proscribed, i.e., "presence" or "loitering." (*Curfew Ordinances and the Control of Nocturnal Juvenile Crime, supra,* 107 U.Pa.L.Rev. 66, 73.) Those proscribing "presence" or "being in" particular places have been held unconstitutional. (*Alves* v. *Justice Court, supra,* 148 Cal.App.2d 419;[3] *Ex parte McCarver* (1898) 39 Tex.Crim. 448 [46 S.W. 936].)[4] Those interpreted as only proscribing "loitering" or "remaining" have been held constitutional. (*Thistlewood* v. *Ocean City, supra,* 236 Md. 548 [204 A.2d 688];[5] *Portland* v. *Goodwin* (1949) 187

---

[1] The ordinance provided:
"It shall be unlawful for any person wandering or loitering abroad, or abroad under other suspicious circumstances, from one-half hour after sunset to one-half hour before sunrise, to fail to give a satisfactory account of himself upon the demand of any police officer." (70 Wn.2d at p. 406.)

[2] The statute provided that "any person who shall habitually loaf, loiter, and/or idle upon any public street or highway or in any public place shall be guilty of a misdemeanor, . . ." (48 F.2d 171.)

[3] The ordinance provided in pertinent part: " 'It shall be unlawful for any minor under the age of seventeen years of age *to be in or on* any public street, park, square or any public place. . . .' " (Italics added.) (148 Cal.App.2d at p. 420.) Certain exceptions were included.

[4] The ordinance provided in part: " 'Any person under the age of twenty-one years who shall be *found upon* any of the streets or alleys. . . .' " (Italics added.) (46 S.W. 936.) Certain exceptions were included.

[5] The ordinance was construed to prohibit " 'remaining' on the streets and other public areas of the town rather than as merely being on or traversing them." (Italics added.) (204 A.2d at p. 692.)

Ore. 409 [210 P.2d 577] (applying to all persons);[6] *People* v. *Walton* (1945) 70 Cal.App.2d Supp. 862 [161 P.2d 498].)[7] Even those ordinances proscribing "presence" may be reasonable if sufficient exceptions are included making it clear that mere "presence" alone is not proscribed. (*City of Eastlake* v. *Ruggiero, supra,* 7 Ohio App.2d 212 [36 Ohio Ops.2d 345, 220 N.E.2d 126].)[8]

The rationale of those cases holding that ordinances proscribing "presence" are unconstitutional is that they are unnecessarily broad. As the court noted in *Alves* v. *Justice Court, supra,* 148 Cal.App.2d 419, 424-425: "True, the ordinance would preclude *aimless loitering* by minors in public places during the hours set forth, but it would also make unlawful many other activities by minors which otherwise would be entirely lawful." (Italics added.)

By contrast, the ordinance in *People* v. *Walton, supra,* 70 Cal.App.2d Supp. 862, 864, proscribed remaining or loitering. The court noted at page 866; "Such a provision is aimed then at preventing such minors from tarrying and staying unnecessarily upon the streets and public places, and does not restrict those minors who are using or are on such streets or places while actually in the process of going to or from places of business or amusement or otherwise."

The ordinance in question proscribes a minor from loitering, idling, wandering, strolling, or playing, in or upon the public streets after 10 p.m.[9] It appears to us that the ordinance here, although admittedly somewhat broader than the one in *Walton, supra,* is still a loitering type ordinance

---

[6]The ordinance prohibited "any person *to roam or be upon* any street . . . without having and disclosing a lawful purpose." (Italics added.)

[7]As amended the ordinance prohibits a minor "who *remains* or loiters." (Italics added.) (70 Cal.App.2d Supp. at p. 864.) Certain exceptions were provided.

[8]The ordinance declared it unlawful for any minor *"to be upon* the streets." (Italics added.) (220 N.E.2d at p. 127.) However, the court interpreted the ordinance as "not an absolute prohibition against minors being present" in view of the exceptions. It noted that "[T]here is no curtailment of normal or necessary juvenile nighttime activities." (*Id.* at p. 128.)

[9]To loiter has been defined as "to interrupt or delay an activity or an errand or a journey with or as if with aimless idle stops and pauses and purposeless distractions . . . ." (Webster's Third New Internat. Dict.)
To idle has been defined as to "lose or spend time in idleness . . . ." (*Id.*)
To wander has been defined as "to move about without a fixed course, aim, or goal. . . ." (*Id.*)
To stroll has been defined as "to walk in a leisurely or idle manner. . . ." (*Id.*)
To play has been defined as "to engage in recreational activity; amuse or divert oneself." (*Id.*)

rather than "a presence" type ordinance because the words taken together and used in their ordinary sense prohibit tarrying and remaining in place and not merely being present.

We also note the ordinance in question is not applicable to *all* persons but only to minors under 18 years of age. Loitering and vagrancy ordinances purporting to regulate the nocturnal activities of all persons have been frequently struck down by the courts as an unreasonable interference with the activities of the citizenry. (See *Papachristou* v. *City of Jacksonville*, (1972) 405 U.S. 156 [31 L.Ed.2d 110, 92 S.Ct. 839]; *Seattle* v. *Drew*, *supra*, 423 P.2d 522; *Territory of Hawaii* v. *Anduha*, *supra*, 48 F.2d 171.) It is well settled, however, that juveniles may be reasonably classified differently from adults since "[T]he law has long recognized the validity of classifications based upon age." (*Ames* v. *City of Hermosa Beach*, 16 Cal. App.3d 146, 153 [93 Cal.Rptr. 786].) Moreover it has been specifically held that curfew regulation of minors is one such reasonable classification. (See *People* v. *Walton*, *supra*, 70 Cal.App.2d Supp. 862.)

Finally, we note the ordinance in question has reasonable and comprehensible exceptions. It has been held that the failure to provide for any exceptions in a curfew ordinance applicable to all persons may render it unconstitutional. (*People* v. *Kearse*, 58 Misc.2d 277 [295 N.Y.S.2d 192].) Curfew ordinances have also been invalidated where the exceptions were overly vague. Thus in *City of Shreveport* v. *Brewer*, 225 La. 93 [72 So.2d 308], the court struck down an ordinance containing an exception that was in terms of being on a street "without satisfactory explanation." The court noted "The words 'satisfactory explanation' are too broad and general and do not have a definite or fixed meaning." (72 So.2d 308, 310.)

In contrast the exceptions in the curfew ordinance in question do not leave it to the whim of a police officer to determine if a minor is on a street for a lawful purpose. If the minor is accompanied by parents there is no violation; if the minor is unattended but is on an errand for a parent or is returning directly home from a meeting, dance or recreational activity, the curfew provisions are not applicable to such minor. In *Alves* v. *Justice Court*, *supra*, 148 Cal.App.2d 419, the curfew ordinance was "a presence type" curfew ordinance. The court observed at page 424 that "the ordinance completely prohibits all minors actually going to or coming from, or being at night classes, library study, games, dances or other school activities, church functions or the theater, . . ." No such unreasonable prohibition is present in the Sacramento ordinance. On the contrary the exceptions specifically preclude such activity from the impact of the ordinance.

Applying the constitutional standard set forth by the court in *Thistlewood, supra,* the ordinance is constitutional. The evil to be prevented is danger to children and the incidence of juvenile crime during nighttime hours. To forbid juveniles from loitering in the streets during nighttime hours has a real and substantial relationship to the dual goal of protection of children and the community, and the ordinance in question does not unduly restrict the rights of minors in view of these interests.

The order appealed from is affirmed.

Molinari, P. J., and Elkington, J., concurred.