THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CYNTHIA L. CHAMBERS *et al.*, Defendants-Appellants.

(No. 73-260;

Second District—October 3, 1975.

WHITE, J., dissenting.

Steven Helfer, Public Defender, of Oregon, for appellants.

Peter J. Woods, State's Attorney, of Oregon, for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendants appeal from their conviction in the Circuit Court of Ogle County for violation of the Illinois juvenile curfew law (Ill. Rev. Stat. 1973, ch. 23, par. 2371).

The relatively simple and, for the most part, undisputed facts may be summarized as follows: In the early morning hours of March 25, 1973, Cynthia Chambers, 17 years of age, her sister, Patricia Chambers, 15 years of age, and a friend who is not involved in this appeal were in a car driven by Cynthia in the rural area of Ogle County. At approximately 1 a.m. their car was parked on a one-lane bridge with its lights out. An Ogle County deputy sheriff saw the darkened vehicle as he drove by on patrol. As he approached the bridge, the car's lights came on and it proceeded across the bridge. When the deputy followed her car, Cynthia stopped and got out to speak to him. After several questions he determined that the girls were of "curfew age" and that no adult accompanied them. He arrested them both for curfew violation.

The curfew statute under which defendants were convicted reads in pertinent part:

"It is unlawful for a person less than 18 years of age to be

present at or upon any public assembly, building, place, street or highway at the following times unless accompanied and supervised by a parent, legal guardian or other responsible companion at least 21 years of age approved by parent or legal guardian or unless engaged in a business or occupation which the laws of the State authorize a person less than 18 years of age to perform:

1. Between 12:01 a.m. and 6:00 a.m. Saturday;
2. Between 12:01 a.m. and 6:00 a.m. Sunday; and
3. Between 11:00 p.m. on Sunday to Thursday, inclusive, and 6:00 a.m. on the following day."

Cynthia and Patricia Chambers were tried in the circuit court of Ogle County and convicted of violating the curfew. On appeal, as at trial, they challenge the constitutionality of the curfew statute. They argue that its provisions, by restricting their freedom of movement, deprive them of liberty without due process of law in contravention of the fourteenth amendment to the Constitution of the United States, and of article I, section 2, of the 1970 Illinois Constitution.

The constitutionality of curfew laws, when measured by the standard of due process, has been considered in a variety of situations. In the days immediately following the attack on Pearl Harbor, the military commander for the Western Defense Command (which comprised Alaska Territory, Washington, Oregon, California, and five other states) imposed by proclamation a curfew for all persons of Japanese ancestry. Under this proclamation, all such persons living in the Pacific coast states had to remain in their homes between 8 p.m. each night and 6 a.m. the next morning. In *United States v. Gordon Kiyoshi Hirabayashi*, 46 F. Supp. 657 (W.D. Wash. 1942), *aff'd*, 320 U.S. 81 (1943), the defendant, an American citizen of Japanese ancestry, was arrested in Seattle for violating the curfew. He attacked the curfew as being an encroachment by the Federal Government upon his liberty, without due process of law, in breach of the Fifth Amendment to the United States Constitution. In response to his argument, the Federal district court said: "[T]he decision of the case must be in the light of the unprecedented world conflict which so suddenly engulfed this nation, in the light of this being a declared Military Area  *  *  *," and "There must, of course, be extraordinary reasons to justify curfew for, or removal, even from a military area, of American citizens residing therein. But with respect to those of Japanese ancestry in Military Area No. 1, certainly since Pearl Harbor most extraordinary reasons have obtained." The United States Supreme Court affirmed the decision with similar language.

More recent cases involving curfew laws stem from the efforts of urban officials to prevent or to end riots in their cities. (See, for example,

*United States v. Chalk*, 441 F.2d 1277 (4th Cir. 1971) (curfew proclaimed by mayor of Asheville, North Carolina, after battles between police and high school students in September, 1969); *Glover v. District of Columbia*, 250 A.2d 556 (D.C. App. 1969) (curfew declared by Commissioner of Washington, D.C., during a riot in April, 1968; extended from night to night until the violence ceased); *Ervin v. State*, 41 Wis.2d 194, 163 N.W.2d 207 (1968) (curfew imposed by the mayor of Milwaukee in order to prevent a riot from occurring in the summer of 1967); *Davis v. Justice Court*, 10 Cal.App.3d 1002, 89 Cal. Rptr. 409 (1970) (curfew imposed on an area around a housing project in Pittsburg, California, during a riot there in 1968).) In all these cases, the validity of the curfew was directly in issue, and the curfew was upheld as a reasonable measure for restoring the public peace.

In both the military curfew and the riot curfew cases, three factors were present that strongly disposed the courts in favor of the curfew laws: An emergency existed, wherein the safety of the public was obviously and gravely threatened; the curfew, as an attempt to cope with the emergency, was limited to the place of the emergency; and the curfew was limited in time to the duration of the emergency. The importance of these factors was most clearly recognized in the *Glover* case at 250 A.2d 556, 560.

Another type of curfew has been employed in this country since the end of the 1800s. This is a curfew, typically established by city ordinance, which requires juveniles to be off the streets by a certain hour every night. This kind of curfew differs from military and riot curfews in that it is not instituted to deal with any pressing emergency, and that its duration is not limited. Traditionally, the incentive for passing juvenile curfew ordinances has been the hope of city officials that a curfew would keep children apart from evil influences found in a city at night and also help police to prevent juvenile delinquency by giving the police authority to command nighttime gatherings of youngsters to disperse. See Note, *Curfew Ordinances and the Control of Nocturnal Juvenile Crime*, 107 U. Pa. L. Rev. 66, 66-68 (1958).

The judicial response to juvenile curfew laws has been inconsistent. The first pronouncement on their validity was made in 1898, in *Ex parte McCarver*, 39 Tex. Crim. 448, 452, 46 S.W. 936, 937 (Tex. Crim. App. 1898), in which the court said, concerning the curfew ordinance of Graham, Texas:

> "The rule laid down here is as rigid as under military law, and makes the tolling of the curfew bell equivalent to the drum taps of the camp. In our opinion, it is an undue invasion of the personal liberty of the citizen, as the boy or girl * * * have [*sic*] the

same rights of ingress and egress that citizens of mature years enjoy."

The later case of *Alves v. Justice Court*, 148 Cal. App. 2d 419, 425, 306 P.2d 601, 605 (1957), followed *Ex parte McCarver* in condemning curfews for juveniles with the following language:

"* * * The general right of every person to enjoy and engage in lawful and innocent activity while subject to reasonable restrictions cannot be completely taken away under the guise of police regulation. Any regulation to the contrary will be stricken down as an arbitrary invasion of the inherent personal rights and liberties of all citizens. Thus, since it cannot be said that prohibition against the mere presence of a minor on a street or in a public place between the designated hours for a purpose other than required by his business, or unless accompanied by a parent or legal guardian, has any real or substantial relationship to the primary purpose of the statute, it therefore constitutes an unlawful invasion of personal rights and liberties, and for that reason is unconstitutional."

Other cases, however, have upheld the constitutionality of juvenile curfew laws having unlimited duration. Among these are *In re C.*, 28 Cal. App. 3d 747, 105 Cal. Rptr. 113 (1972); *City of Eastlake v. Ruggiero*, 7 Ohio App.2d 212, 220 N.E.2d 126 (1966); and *People v. Walton*, 70 Cal. App. 2d Supp. 862, 161 P.2d 498 (1945). The decisions in two of these cases, *In re C.* and *People v. Walton*, rested partially on reasoning that the curfew ordinance before the court only prohibited a juvenile's "remaining or loitering" on the streets after the curfew hour, and did not prohibit the juvenile's presence on the streets. The implication of this reasoning is that prohibition of the juvenile's presence on the streets at night would have been regarded as unconstitutionally broad. Indeed, this supposed distinction between "remaining or loitering" curfew ordinances and "presence" curfew ordinances has often been grasped in an attempt to harmonize cases that have validated the ordinances and cases that have declared them unconstitutional. (See, for example, *In re C.*, 28 Cal. App. 3d 747, 755, 105 Cal. Rptr. 113, 119 (1972).) But such reasoning that "remaining" curfew ordinances are constitutional while "presence" curfew ordinances are not, is completely unsatisfactory as a basis for decision, primarily because both kinds of ordinances are likely enforced by the police as though they prohibited the presence of juveniles on streets after the curfew. (See Note, *Curfew Ordinance and the Control of Nocturnal Juvenile Crime*, 107 U. Pa. L. Rev. 66, 73 (1958).) Another difficulty inherent in an attempt to validate a curfew ordinance because it prohibits only "remaining and loitering" is that the terms "remaining

and loitering" give an unclear definition of what conduct by juveniles is forbidden; the statute thus lends itself to arbitrary and discriminatory application in violation of constitutional rights. Because of such vagueness in definition and the chances of arbitrary enforcement, a "remaining" type juvenile curfew ordinance might well be unconstitutional under the rationale of *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972), in which a vagrancy ordinance was struck down because of similar defects.

The court in *City of East Lake v. Ruggiero* took the preferable route to holding that the juvenile curfew ordinance of East Lake, Ohio, was constitutional, that is, it conceded that the ordinance forbade, with certain exceptions listed in the ordinance, the presence of juveniles on the street after the curfew hour, but then went on to find that the curfew met the requirements of due process because it promoted "the safety and good order of the community." An important element in the court's decision was its assumption that "the activities and conduct of minor children under 18 years of age may be regulated and restricted to a far greater extent than those of adults." (220 N.E.2d 126, 128.) The same assumption was made in *People v. Walton.*

The above summary of those cases which have sustained juvenile curfews underscores the significance of the assumption that juveniles are, as a matter of course, more subject to governmental regulation than adults. Such an attitude appears to be the only reason for the different standards utilized in assessing the validity of curfews. For example, the Illinois juvenile curfew statute at issue here could not possibly stand up to the three criteria previously discussed with reference to riot and military curfew cases (*i.e.*, limitations of time and area of imposition where an actual emergency exists). We must therefore consider whether the assumption that juveniles are more susceptible to curfew restrictions is warranted. In this same analysis we must of necessity examine the nature and value of the rights of juveniles that are infringed by a curfew. Then only will it appear whether *Ex parte McCarver* and *Alves v. Justice Court*, holding curfews for juveniles unconstitutional, or *City of East Lake v. Ruggiero*, affirming the constitutionality of a juvenile curfew ordinance, are correct.

By its terms, the Illinois juvenile curfew law prohibits juveniles from freely going in public during a period of six or seven hours each day. The right of individuals to move about in public, whenever they choose to do so, is of the utmost importance. This right involves not so much the freedom to travel to a certain place (which was held protected by the United States Constitution in *Aptheker v. Secretary of State*, 378 U.S. 500 (1964), and *Kent v. Dulles*, 357 U.S. 116 (1958)) as it does the free-

dom to enter into an invaluable social relationship. When a person walks out into public he removes the barriers that inhibit ready association and communication by him and his fellow citizens. Only when he is in public may he enjoy the most meaningful exercise of his freedom of speech, his freedom of association, his freedom peaceably to assemble with others, and his freedom of religion. These are freedoms secured by the first amendment to the United States Constitution and by article I of the Constitution of Illinois, 1970. In order to safeguard them, the right of an individual to go into public, to travel in public places, at any hour of any day, must also be considered as protected by the first amendment. (*Ervin v. State*, 41 Wis.2d 194, 163 N.W.2d 207 (1968).) Because "the fundamental concept of liberty embodied in (the Fourteenth) Amendment embraces the liberties guaranteed by the First Amendment" (*Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)), the fourteenth amendment will protect this right of movement in public from encroachment by the States.

Since the decision in the case of *In re Gault*, 387 U.S. 1 (1967), which required that the demands of due process be satisfied by the procedures followed in State juvenile justice systems, it has been clear that the due process clause of the fourteenth amendment applies in like manner to juveniles and adults. And neither the first amendment of the United States Constitution nor corollary sections of article I of the Illinois Constitution define "people" as a "person not less than 18 years of age." Rather, the preambles of both of the documents note that one of the important reasons for establishing a constitution is to secure the blessings of liberty "to ourselves and our posterity."

The importance of the right to move about in public has been discussed. That it is a right possessed by juveniles equally with adults has been asserted. And other specific constitutional guarantees necessarily affected by the enforcement of a curfew have been noted. However, it is not necessary to point out with particularity constitutional infirmities inherent in a curfew statute such as the one here at issue. Suffice it to say that the overall attitude of our constitutions and our democratic society mandate freedom and notions of liberty which our legislature may not override. Something more than police convenience or a mere hope that juveniles or society will be benefited by a curfew should be necessary to justify a statewide curfew law for juveniles. Military curfews and riot curfews can be justified constitutionally only on the ground that a compelling emergency requires temporary suspension of fundamental liberties; but a blanket, year-to-year prohibition against exercising fundamental constitutional rights, where no emergency or similar circumstances exist, cannot be justified. We therefore believe a compelling emergency

must exist before such a curfew may be imposed, and its imposition should be tolerated only so long as the emergency exists.

An additional point which merits emphasis concerns the geographical influence of the Illinois juvenile curfew law. Those cases which have sustained the validity of juvenile curfews have dealt with city ordinances or other regulations pertaining to limited geographical areas. But the Illinois law is statewide; it applies with like effect to all areas of the State, irrespective of crime rate, population or other pertinent factors. Laws that sweep so broadly can lead to selective enforcement and other unfortunate results. (For example, in *People v. Miller*, 23 Ill.App.3d 149, 318 N.E.2d 739 (1974), a 20-year-old defendant was sentenced to serve a year in the State farm at Vandalia, Illinois, for causing a 16-year-old girl to be present on the streets of Albion, Illinois, after the hour of 11 p.m.) While there may be some legitimate basis for invoking a similar writing in the form of an ordinance where the crime rate is extraordinarily high or some other similar rationale exists, such language when applied to an entire State of such a diverse character as Illinois creates an impermissible restraint.

In our opinion, the Illinois curfew law which restrains a segment of our society from freely walking the streets when no emergency exists is incompatible with the basic principles upon which free societies are founded. Since the curfew statute violates the basic spirit of a free society as well as the specific constitutional guarantees noted above, it violates both the Federal and State constitutions.

The judgment of the circuit court of Ogle County is reversed.

Judgment reversed.

CARTER, J., concurs.

Mr. JUSTICE WHITE, dissenting:

I dissent. I am of the opinion that the statute in question is a valid exercise of police powers of the State of Illinois by its legislature; that it does not unreasonably interfere with the activities of persons under 18 years of age and that it does not violate due process or any other constitutional guaranties of the defendants.

I am of the further opinion that the "curfew statute" is a legitimate effort on behalf of the legislature to control the presence of juveniles on the streets and in public places unless properly supervised or engaged in a lawful business or occupation. There is no unreasonable curtailment of normal or necessary juvenile nighttime activities. The record before us is completely void of any showing that the statute in question inter-

feres with any social, religious, school or other legitimate activities of the defendants during the "curfew hours."

There is no question that the statute is question discriminates against a class, *i.e.*, all persons under 18 years of age, but the law is clear that an act which discriminates against an individual or group is not of itself sufficient to render it invalid. Such discrimination, to violate constitutional guaranties, must be unreasonable and wanting in that basis required by law. (See *People ex rel. Reilly v. City of Chicago* (1929), 337 Ill. 100.) It is to be noted that the statute in question treats all persons under 18 years of age alike. Where the legislature has considered a problem and has enacted legislation therein, the act is presumptively a valid exercise of the power and the burden rests upon the one assailing the statute to show that it is without reasonable basis and entirely arbitrary. (*Memorial Gardens Association, Inc., v. Smith* (1959), 16 Ill.2d 116, 156 N.E.2d 587, 592.)

I would follow the Ohio Court in *City of East Lake v. Ruggerio* (1966), 7 Ohio App. 2d 212, 220 N.E.2d 126, and affirm the trial court.