Opinion
SOVEN, J.
These three cases, consolidated on appeal, involve the meaning of the April and May 1992 “Curfew Law,” consisting of a Los Angeles City ordinance and an emergency order issued by the Mayor of Los Angeles. The Curfew Law was put in effect during the civil disturbances that followed the announcement of the verdict in the first Rodney King case. We agree with defendants that “mere presence” on the street is not a violation of the Curfew Law as written, and for that reason all three judgments will be reversed and the complaints ordered dismissed.
*Supp. 23 Background
All defendants were convicted of violating Los Angeles City Administrative Code section 8.77, subdivision (b), violating an emergency order of a nature to imperil lives or property or prevent, hinder or delay defense or protection of the city.[1] The relevant facts are undisputed.
After civil disturbances (including arson, looting, vandalism and assaults) erupted following the announcement of verdicts in the first Rodney King case, the Mayor of Los Angeles, pursuant to the Los Angeles Administrative Code, declared a state of emergency and issued an order which prohibited persons from being upon public streets between certain hours. The emergency order was amended several times during the course of the disturbances and eventually the curfew covered the entire city, and provided for certain exceptions. On April 30, 1992, at 4 p.m., the mayor issued an amended order[2] which provided, as relevant: “No person shall be upon any public street. . . anywhere within the City boundaries between sunset and sunrise of the following day.” Exceptions were provided for various peace, firefighting and military personnel, and for “activities that are necessary and essential for health, safety, or emergency-related purposes.” A violation of the order was punishable under section 8.77 (Ante, fn. 1.)
*Supp. 24 Facts
Defendant George Richard Continola was arrested on May 1, 1992, about 8:30 p.m., walking in an alley between Maple Avenue and Wall Street. After various motions and writ petitions were denied, defendant Continola submitted his case upon the police report; the parties stipulated to the bare facts contained in the arrest report and those facts of which a court must or may take judicial notice. Defendant Continola was convicted.
Defendant Rodney Bowden was arrested on May 4, 1992, about 12:40 a.m., driving a vehicle on Broadway near Golden Avenue. Defendant Bowden was tried by the court. The parties stipulated to the bare facts contained in the arrest report and those facts of which a court must or may take judicial notice. Defendant Bowden was convicted.
Defendant Joann Maria Jaimes was arrested on May 1, 1992, about 11:45 p.m., sitting with a passenger stopped in a vehicle on Parthenia near Lang-don Street. Defendant Jaimes’s motion to dismiss, based on insufficiency of the evidence, was denied. A jury convicted defendant Jaimes of violating the ordinance, based on an instruction that advised the jury, in substance, that any person on the street was in violation of the law unless that person fell within one of the exceptions.
Discussion
Both parties recognize that given the events of late April and early May 1992, a curfew law was justified. The sole issue we need decide involves the interpretation of the Curfew Law, consisting of section 8.77, subdivision (b) and the mayor’s emergency order, Defendants contend that if the Curfew Law is properly applied, the evidence is insufficient to sustain their convictions. We agree.
We state the basic rules: Courts are bound to give effect to laws according to the usual and ordinary meaning of the language used in framing the laws, and if the words of a law are clear the court should not alter those words to accomplish a purpose not apparent on the face of the law. (E.g., California Teachers Assn. v. San Diego Community College Dist. (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) “[W]here possible, significance should be given to every word, phrase [and] sentence” of a legislative act. (People v. McCart (1982) 32 Cal.3d 338, 342 [185 Cal.Rptr. 284, 649 P.2d 926].)
The law in this case consists, as noted of section 8.77, subdivision (b), which defendants were charged with violating, and the mayor’s emergency *Supp. 25 order. Read together, each defendant was necessarily charged with the following offense: During “a local emergency” defendant did an “act forbidden by any lawful. . . order” which act was “of a nature” as to “imperil the lives or property” of other city inhabitants, “or to prevent, hinder or delay the defense or protection” of the city, i.e., each defendant was upon a public street within Los Angeles city boundaries between sunset and sunrise of the following day, and was not within the specified exempt categories or engaged in any of the exempt activities. (See fn. 2, ante.)
The People concede that no evidence was presented in any of these three cases to support a finding that any defendant did any act that might imperil lives or property or hinder or delay law enforcement, The People’s contention is this: Given the circumstances of the emergency, “the nature of the act forbidden by the mayor’s order (being on the street after dark) imperiled lives and property, and hindered or delayed the defense and protection thereof.” This contention is mirrored in the People’s theory that the only acts which section 8.77, subdivision (b) criminalizes are those acts, which as a matter of law, would be of a nature to imperil lives or hinder law enforcement. The People’s theory is conceptually equivalent to an improper presumption.
We recognize that there are situations in the criminal law where certain facts need not be proven because those facts are part of the statutory definition of the crime. (See People v. Dillon (1983) 34 Cal.3d 441, 475 [194 Cal.Rptr. 390, 668 P.2d 697] [rejecting the contention that the felony-murder rule involved an impermissible presumption and concluding that killings in the course of committing certain felonies were first degree murder “because of the substantive statutory definition of the crime.”], italics omitted.) Assuming that the legislative body intended in section 8.77, subdivision (b), to create a mandatory presumption that any person on the street was necessarily engaged in conduct of a nature to imperil lives or property or hinder or delay law enforcement, that ordinance would be unconstitutional. (Carella v. California (1989) 491 U.S. 263, 265 [105 L.Ed.2d 218, 221-222, 109 S.Ct. 2419]; see discussion in 5 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989), § 2657, pp. 3191-3192; 1 Witkin, Cal. Evidence (3d ed. 1986), §§ 180-182, pp. 154-156.) Certainly, nothing in the diffuse language of section 8.77, subdivision (b) suggests that the legislative body intended that language to constitute a “ ‘substantive . . . definition’ of the crime.” (People v. Dillon, supra, 34 Cal.3d at p. 475.)
The People contend that our interpretation “not only renders the language of the statute surplusage, but also completely destroys the mayor’s authority to issue meaningful orders in emergency situations.” It is, however, the *Supp. 26 People who would render the language of section 8.77 “surplusage.” If the Curfew Law is difficult to enforce, the only reason for that difficulty is that the city council chose to enact an ordinance which limited criminal culpability for violating a mayor’s emergency order to situations where an act was “of a nature” to imperil lives or property or prevent, hinder or delay law enforcement. We are aware of nothing in American law which prevented the city legislative body from enacting an ordinance which made any violation of a mayor’s emergency order a crime.[3]
In sort, section 877, subdivision (b) is an integral part of the Curfew Law. To prove a violation of the Curfew Law, the People were required to prove, as part of the elements of the offense, that each defendant committed an “act . . . of a nature” to “imperil. . . lives or property” orto “hinder or delay” law enforcement. There was, however, no such evidence, and even assuming that the trial court was entitled to take judicial notice of every factor affecting the condition of the city, the inference that these defendants violated section 8.77 solely by being on the street requires a leap in logical inferences which the record cannot support.
We note that defendants appear to contend that even if section 8.77, subdivision (b) is construed to be an essential element of the prosecution’s case, the Curfew Law is nonetheless unconstitutional because no provision is made for homeless persons or others who have good cause to be on the street. The contention is without merit. The order is not absolute in its scope; rather, as discussed, exceptions are provided for the most important of exempt persons or activities. These persona and any others who are on the street are in a better position than the People to show that notwithstanding the emergency, their conduct was exempt or excused. (See, e.g., People v. Yoshimura (1979) 91 Cal.App.3d 609, 625-629 [154 Cal.Rptr. 314].) Nothing in the. language of the ordinance or the order suggests that the city intended that express or implied exceptions be part of the People’s burden of proof. (People v. Dewberry (1992) 8 Cal.App.4th 1017, 1020-1021 [10 *Supp. 27 Cal.Rptr.2d 800].) The facts showing either that a defendant is within the stated exemptions, or, though not within the stated exemptions, is entitled to raise the defense of, for example, necessity, involve information more likely to be known to the defendant. Under the so-called rule of convenience, it is not unreasonable that those persons may, if arrested, raise and prove by a preponderance of the evidence that an exception or special defense applies. (See also People v. Yoshimura, supra, 91 Cal.App.3d at pp. 626-627; People v. Waters (1985) 163 Cal.App.3d 935, 937 [209 Cal.Rptr. 661] [necessity]; People v. Pritchard (1984) 162 Cal.App.3d Supp. 13, 16-17 [209 Cal.Rptr. 314] [unique partition ratio of defendant’s breath]; People v. Pena (1983) 149 Cal.App.3d Supp. 14, 25-26 [197 Cal.Rptr. 264, A.L.R.4th 1724] [duress].)
We need not discuss any other of defendants’ contentions. We do not decide the quantum of evidence necessary to establish that an act is of a nature as to imperil lives or hinder law enforcement, We have interpreted the Curfew Law to require that section 8.77, the basis for defendants’ convictions, be read as part of the law. The evidence in all three cases was insufficient to sustain the convictions. The judgments must be reversed and the complaints dismissed, because this appeal is reversed on grounds of insufficiency of the evidence. (People v. Belton (1979) 23 Cal.3d 516, 527 [153 Cal.Rptr. 195, 591 P.2d 485].)
The judgments are reversed and the complaints ordered dismissed.
Roberson, P. J., and Watai, J., concurred.

Section 8.77 of the Los Angeles Administrative Code (section 8.77) provides as follows:
“It shall be a misdemeanor, punishable by a fine not to exceed $1,000.00 or by imprisonment not to exceed six months, or both, for any person, during a local emergency declared pursuant to this chapter, to:
“a. Willfully obstruct, hinder or delay any member of the Emergency Operation Organization in the enforcement of any lawful rule or regulation, order or directive issued pursuant to this chapter in the performance of any duty imposed by virtue of this chapter.
“b. Do any act forbidden by any lawful rule, regulation, order or directive issued pursuant to this chapter, if such act is of a nature as to give, or be likely to give, assistance to any national enemy, or imperil the lives or property of other inhabitants of this City, or to prevent, hinder or delay the defense or protection thereof.”

The curfew order promulgated by the mayor and provided at 3:55 p.m., April 30, 1992, as relevant, follows:
“. . . I hereby declare the following orders to be necessary for the protection of life and property.
“1. No person shall be upon any public street, avenue, boulevard, place, alley, park, or other public place or unimproved private realty anywhere within the City boundaries between sunset and sunrise of the following day.
“2. No person shall sell . . . gasoline . . . except for normal filling of motor vehicle gasoline tanks. . . .
“3. No person shall sell . . . ammunition. . . .
“4. These restrictions shall not apply to peace officers, fire fighters, Emergency Operations . . . personnel, and National Guard and other military personnel, or to activities that are necessary and essential for health, safety or emergency-related purposes. . . .
“5. Any violation of these regulations shall be punished as provided by Los Angeles Administrative Code, Chapter 3, Section 8.77.”
Defendants were arrested after the quoted order was in effect. (May 1 and May 4.)

Five jurisdictions have been called upon to review, for one reason or another, curfew ordinances. Gayle v. Governor of Guam (Dist.Ct.Guam 1976) 414 F.Supp. 636, 639, held a governor’s declaration of a curfew law invalid because there was no statutory authority to justify such a law. No other curfew law has been held invalid; none involved a law, as here, defining the elements of the offense. (See United States v. Chalk (4th Cir. 1971) 441 F.2d 1277, 1283-1285 and State v. Dobbins (1971) 277 N.C. 484 [178 S.E.2d 449, 456-458] [both involving a statute authorizing an ordinance which authorized an emergency order prohibiting travel upon public streets]; Moorhead v. Family (Dist.Ct.V.I. 1989) 723 F. Supp. 1109, 1113-1114 [V.I. statute authorizing governor to declare emergency and restrict movements within area]; Glover v. District of Columbia (D.C. Cir. 1969) 250 A.2d 556, 558-560 [D.C. curfew upheld based on general legislative authorization]; State v. Boles (1967) 5 Conn.Cir.Ct. 22 [240 A.2d 920, 923-926] [curfew ordinance upheld based on general authorization for mayor to act as sheriff and suppress riots, etc.].)