[No. B073351. Second Dist., Div. Two. Sept. 30, 1994.]

In re JUAN C., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JUAN C., Defendant and Appellant.

**COUNSEL**

Daniel L. Krishel, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Linda C. Johnson and Lance E. Winters, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BOREN, P. J.**—This appeal addresses the constitutionality of a curfew regulation aimed at controlling civil unrest. We conclude that the curfew regulation passes constitutional muster in that it is neither overly broad nor impermissibly vague.

### FACTS

On April 29, 1992, widespread rioting, looting, arson, violence, and general civil disorder broke out in the County of Los Angeles. Military troops were called in to help quell the disturbance and restore order when it became apparent that local law enforcement agencies were overwhelmed by the extent of the problem. In response to this emergency, a number of cities adopted curfew regulations.

The Long Beach City Manager declared a local emergency on April 30, 1992, as permitted by law, on the grounds that the city was under extreme peril due to actual and threatened civil disorder.[1] Exercising his authority to make rules and regulations on matters reasonably related to the protection of life and property during an emergency, the city manager issued a curfew regulation. (Long Beach Mun. Code, §§ 2.69.030, 2.69.060. 2.69.070.)

The Long Beach curfew regulation, effective April 30, 1992, reads: "CURFEW. 1. No person shall be upon the public streets, avenues, alleys, parks, ways or any other public place or upon unimproved private real property between the hours of 7 pm and 6 am within the City of Long Beach: . . . 4. The law enforcement forces of this City, along with other law enforcement authorities cooperating with the City are hereby authorized and charged, to the extent provided by law with the responsibility of enforcing this curfew, and are further authorized to arrest such persons as do not obey this curfew after due notice, oral or written, has been given to said persons."

---

[1]Government Code section 8630 provides: "A local emergency may be proclaimed only by the governing body of a county, city and county, or city or by an official so designated by ordinance adopted by such governing body. . . ." The Long Beach Municipal Code authorizes the city manager, in the capacity of director of civil defense/emergency services, to declare a local emergency when Long Beach is affected or likely to be affected by a public calamity and the city council is not in session. (Long Beach Mun. Code, § 2.69.060.)

A violation of the curfew was punishable as a misdemeanor. (Long Beach Mun. Code, § 1.32.010.) Police officers, fire fighters and other emergency personnel, and authorized representatives of the media were exempted from the provisions of the curfew regulation. The curfew was to continue until rescinded or until the emergency ended.

On May 2, 1992, a Long Beach police officer approached 14-year-old Juan C., who was standing with another person in the parking lot of a mini-mall. It was 11 o'clock at night, and the businesses in the mall were closed. The officer advised the two that a curfew was in effect, and that they would have to leave. Appellant indicated that he lived nearby. The officer replied that it was not enough that appellant lived nearby, that the curfew required appellant to go home. Appellant did not respond. The officer said, "Is there anything that I can say or do to get you to leave?" Appellant just stared. The officer then arrested appellant.

In a petition under section 602 of the Welfare and Institutions Code, it was alleged that appellant unlawfully violated the curfew regulation. Appellant denied the allegation and demurred to the petition, challenging the constitutionality of the curfew regulation. The juvenile court overruled the demurrer, found the allegations in the petition true and adjudged appellant to be a ward of the court. Appellant was placed on six-month home probation.

## DISCUSSION

There are a number of points which appellant does not contest on appeal. First, he does not dispute that a state of emergency existed when the curfew went into effect and he was arrested. Second, appellant does not contend that the mini-mall parking lot is not a public place within the meaning of the curfew regulation. Third, he does not dispute that he received notice of the curfew from the arresting officer, as required by the regulation.

The only issue appellant raises on appeal is the constitutionality of the curfew regulation. He does not claim that there is insufficient evidence to support the lower court's findings. (See, e.g., *People* v. *Continola* (1993) 15 Cal.App.4th Supp. 20, 27 [19 Cal.Rptr.2d 225].)

1. *The Curfew Regulation Is Not Overly Broad*

State law permits local governments to enact curfew regulations during emergencies. (Gov. Code, § 8634.)[2] In regard to the emergency that occurred in this instance, the trial court took judicial notice of a fact commonly known

---

[2]"During a local emergency the governing body of a political subdivision, or officials designated thereby, may promulgate orders and regulations necessary to provide for the

within the court's territorial jurisdiction. (Evid. Code, § 452, subd. (g).) Namely, it recognized that a well-publicized riot situation arose in Long Beach and throughout the county which involved looting, assaults, and homicide. The gravity of the predicament was such that a curfew served a legitimate purpose in putting an end to the disorder, the court observed. Appellant does not attack the trial court's finding that a local emergency existed at the time the curfew regulation was adopted.

■ Appellant asserts that the Long Beach curfew regulation is unconstitutionally overbroad on its face because it unreasonably restricts personal rights and liberties, including the right to travel, the right to associate, the right to assemble, and the right to free speech. (U.S. Const., 1st, 5th & 14th Amends.)

■ While a state and its political subdivisions generally have the power to proscribe certain conduct, a law may be deemed facially invalid because it seeks to prohibit an overly broad range of protected conduct. (*City Council* v. *Taxpayers for Vincent* (1984) 466 U.S. 789, 796 [80 L.Ed.2d 772, 781, 104 S.Ct. 2118].) The "overbreadth" doctrine recognizes that "the very existence of some broadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected." (*Id.* at p. 798 [80 L.Ed.2d at p. 782].) The Supreme Court observed that in weighing the likelihood that a statute's very existence will inhibit free expression, " 'particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' " (*Id.* at pp. 799-800 [80 L.Ed.2d at p. 783], quoting *Broadrick* v. *Oklahoma* (1973) 413 U.S. 601, 615 [37 L.Ed.2d 830, 841-842, 93 S.Ct. 2908].)

■ A curfew primarily regulates conduct or, more specifically, movement. Its effect on speech is incidental. A curfew does not purport to regulate the content of speech, but rather imposes restrictions on the time, place and manner in which speech may be exercised. Discretionary determinations by a public official of which viewpoints will be heard and which will not be heard encourage censorship and discrimination, and are constitutionally suspect. (*Cox* v. *Louisiana* (1965) 379 U.S. 536, 557 [13 L.Ed.2d 471, 485-486, 85 S.Ct. 453].) No such discrimination or censorship occurs when

protection of life and property, including orders or regulations imposing a curfew within designated boundaries where necessary to preserve the public order and safety. Such orders and regulations and amendments and recissions thereof shall be in writing and shall be given widespread publicity and notice." (Cf. *Gayle* v. *Governor of Guam* (D. Guam 1976) 414 F.Supp. 636, 638, where a curfew was invalidated because local law did not authorize the imposition of a curfew in the aftermath of a natural disaster.)

a blanket curfew is imposed. The curfew falls into the category of " ' "a systematic, consistent and just order of treatment, with reference to the convenience of public use of the highways." ' " (*Id.* at p. 558 [13 L.Ed.2d at p. 486].)

Though the right to travel within the United States is constitutionally protected, that right may be legitimately curtailed when a community has been ravaged by flood, fire or disease, and its safety and welfare are threatened. (*Zemel* v. *Rusk* (1965) 381 U.S. 1, 15-16 [14 L.Ed.2d 179, 189-190, 85 S.Ct. 1271].) Rioting, looting and burning pose a similar threat to the safety and welfare of a community, and provide a compelling reason to impose a curfew. The right to travel is a hollow promise when members of the community face the possibility of being beaten or shot by an unruly mob if they attempt to exercise this right. Temporary restrictions on the right to travel at night are a reasonable means of reclaiming order from anarchy so that all might exercise their constitutional rights freely and safely.

An inherent tension exists between the exercise of First Amendment rights and the government's need to maintain order during a period of social strife. The desire for free and unfettered discussion and movement must be balanced against the desire to protect and preserve life and property from destruction. Restrictions on speech are justified when an undeniable public interest is threatened by clear and present danger of serious substantive evils. " 'Whenever the fundamental rights of free speech and assembly are alleged to have been invaded, it must remain open to a defendant to present the issue whether there actually did exist at the time a clear danger; whether the danger, if any, was imminent; and whether the evil apprehended was one so substantial as to justify the stringent restriction interposed by the legislature.' " (*Landmark Communications, Inc.* v. *Virginia* (1978) 435 U.S. 829, 844 [56 L.Ed.2d 1, 13, 98 S.Ct. 1535].)

There is an undeniable and substantial public interest in preventing the imminent destruction of life and property. This compelling interest is promoted by the implementation of a curfew. When used as an instrument to maintain order during a civil disturbance, a curfew: protects from injury those who would otherwise enter the area unaware of the danger and disorder; protects those in the area from vigilante action; reduces pedestrian and vehicular traffic which hinders police and fire fighting mobility; prevents or reduces congregations of people which can engender mob psychology and a carnival atmosphere; reduces the number of incidents requiring police action in the curfew area; and allows the police to administer a rule which is easy to apply. (Comment, *The Riot Curfew* (1969) 57 Cal.L.Rev. 450, 461-462.)

In cases where rioting and general turmoil have resulted in violence and loss of life and property, the courts have upheld curfew regulations as a

reasonable means of protecting public welfare. (See, e.g., *United States* v. *Chalk* (4th Cir. 1971) 441 F.2d 1277; *American Civil Liberties Union* v. *Chandler* (W.D.Tenn. 1978) 458 F.Supp. 456; *State* v. *Dobbins* (1971) 277 N.C. 484 [178 S.E.2d 449]; *Glover* v. *District of Columbia* (D.C. App. 1969) 250 A.2d 556; *Ervin* v. *State* (1968) 41 Wis.2d 194 [163 N.W.2d 207]; *State* v. *Boles* (1967) 5 Conn. Cir. Ct. 22 [240 A.2d 920].)[3]

A few California cases have considered the effect of riot curfews, though none has reached the question of the law's constitutionality. (See *People* v. *McKelvy* (1972) 23 Cal.App.3d 1027, 1035 [100 Cal.Rptr. 661] (validity of a riot curfew was not questioned) and *People* v. *Continola, supra,* 15 Cal.App.4th Supp. 20 (decisive issue was whether there was sufficient evidence to sustain a conviction).)

█ It cannot be gainsaid that the government must make every effort to avoid trammeling its citizens' constitutional rights. By the same token, those rights are not absolute. "[T]he Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest." (*United States* v. *Salerno* (1987) 481 U.S. 739, 748 [95 L.Ed.2d 697, 709, 107 S.Ct. 2095].) An insurrection or riot presents a case in which the government's interest in safety outweighs the individual's right to assemble, speak or travel in public areas so long as an imminent peril of violence exists.

█ The Long Beach curfew regulation does not offend constitutional precepts because the restrictions it imposes are reasonably related to a compelling government interest. The regulation limits outdoor activities in public places during specified hours only so long as an emergency exists, and there is no dispute that a bona fide emergency existed in the city in late April and early May of 1992. The regulation is not directed at any particular class or group, and regulates conduct rather than the content of speech. It exempts law enforcement (to control outbreaks of violence and implement the curfew), fire fighters (to stop the destruction caused by arsonists), and authorized representatives of the media (to disseminate word of the curfew and fill the community's need to know about the course of the riot).[4]

The Long Beach regulation permits the arrest of only those individuals who refuse to obey the curfew even after being given oral or written notice.

---

[3]Other types of curfews which are not a response to any emergency, a juvenile curfew for example, are not always accorded the same deference as military or riot curfews. (Compare *People* v. *Chambers* (1975) 32 Ill.App.3d 444 [335 N.E.2d 612], revd. (1976) 66 Ill.2d 36 [4 Ill.Dec. 308, 360 N.E.2d 55] (finding a blanket juvenile curfew incompatible with constitutional principles) with *In re Nancy C.* (1972) 28 Cal.App.3d 747, 758 [105 Cal.Rptr. 113] (upholding the constitutionality of a curfew ordinance forbidding juveniles from loitering in the streets during nighttime hours).)

[4]Appellant contends that the regulation is unconstitutional because it does not specifically provide an exemption for homeless individuals. It is entirely possible that there are shelters

This prevents the arrest of individuals who are uninformed about the curfew, or who are attempting to reach a permitted place of refuge, such as their place of employment or their homes. Inasmuch as appellant was not exempt from the operation of the regulation, and refused to obey it after being given due notice and an opportunity to comply, he was properly accused of and punished for violating the curfew.

2. *The Curfew Regulation Does Not Encourage Arbitrary Enforcement*

 Appellant asserts that the Long Beach curfew regulation is so vaguely written that it encourages arbitrary and discriminatory enforcement and allows policemen, prosecutors and juries to pursue their personal predilections.

 "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." (*Kolender* v. *Lawson* (1983) 461 U.S. 352, 357 [75 L.Ed.2d 903, 909, 103 S.Ct. 1855].)

 At issue in the *Kolender* case was a California statute barring individuals from loitering or wandering on the streets "without apparent reason or business" and refusing to identify themselves to police or account for their presence. The Supreme Court found the statute unconstitutionally vague because it failed to describe with sufficient particularity what a suspect must do to be guilty of a crime and vested excessive discretion in police officers. (461 U.S. at pp. 358, 361 [75 L.Ed.2d at pp. 909-910, 911].)

Appellant mistakenly asserts that the Long Beach curfew regulation is analogous to the anti-loitering statute in *Kolender.* On the contrary, the curfew regulation does not vest discretion in the police to decide which persons to stop because it applies, on its face, to *all* persons in public places, save for those whose presence is deemed indispensable to either quelling or reporting on the emergency. By specifying that "no person" shall be on public streets, and not just those who are wandering about, or lack a reason or identification, the regulation in this case clearly informs the public and law enforcement as to what constitutes illegal conduct, and does not allow the police to stop people on a "whim." (*Kolender* v. *Lawson, supra,* 461 U.S. at p. 358 [74 L.Ed.2d at pp. 909-910].)

for the homeless within Long Beach which would allow these individuals to comply with the curfew regulation. In any event, the regulation does not become unconstitutional merely because exceptional cases favoring an implied exemption from the curfew could be postulated. (*People* v. *Continola, supra,* 15 Cal.App.4th Supp. at p. 26.)

The New York cases relied upon by appellant are inapposite. In *People* v. *Kearse* (1968) 8 Misc.2d 277 [295 N.Y.S.2d 192], the offending ordinance gave the mayor discretion to choose not only which part or parts of the city would be affected by a curfew, but also which hours of the day the curfew would be in effect. The court found the ordinance unacceptable because it did not exempt emergency and law enforcement personnel from its scope, a problem we do not encounter here. Moreover, the broad discretion given to the mayor to choose when and where to impose a curfew encouraged invidious discrimination against certain groups in certain neighborhoods, and did not affect everyone in the city equally. (295 N.Y.S.2d at pp. 195-196.) The Long Beach regulation, by contrast, affected the entire city at a definite time, and did not single out any particular group or neighborhood to bear a more onerous burden than the rest of the city's residents. In *People* v. *Katz* (1967) 21 N.Y.2d 132 [286 N.Y.S.2d 839, 840, 233 N.E.2d 845], an ordinance made it unlawful "to incumber or obstruct any street . . . with any article or thing whatsoever." Unsurprisingly, this was found to give officers too much discretion in determining what constituted an obstruction or encumbrance. No similar discretionary determinations need be made in this case.

In sum, the Long Beach curfew regulation is not vague or overbroad, and does not lend itself to arbitrary or discriminatory enforcement.

DISPOSITION

The judgment is affirmed.

Gates, J., and Fukuto, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 5, 1995.