TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 97-1201 |
| of | : | |
| | : | March 17, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE BRETT GRANLUND, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

May the owner of a bar, restaurant, or tavern allow smoking in his or her establishment by opening all doors and windows during the hours of employment?

CONCLUSION

The owner of a bar, restaurant, or tavern may not allow smoking in his or her establishment merely by opening all doors and windows during the hours of employment.

ANALYSIS

Labor Code section 6404.5 **Footnote No. 1** prohibits smoking in most places of employment in California. Specifically, subdivision (b) of section 6404.5 provides:

"No employer shall knowingly or intentionally permit, and no person shall engage in, the smoking of tobacco products in an enclosed space at a place of employment." **Footnote No, 2**

In enacting section 6404.5 the Legislature has sought both to protect employees from second-hand smoke and to bring uniformity to workplace smoking restrictions. Subdivision (a) of section 6404.5 states:

"The Legislature finds and declares that regulation of smoking in the workplace is a matter of statewide interest and concern. It is the intent of the Legislature in enacting this section to prohibit the smoking of tobacco products in all (100 percent of) enclosed places of employment in this state, as covered by this section, thereby eliminating the need of local governments to enact workplace smoking restrictions within their respective jurisdictions. It is further the intent of the Legislature to create a uniform statewide standard to restrict and prohibit the smoking of tobacco products in enclosed places of employment, as specified in this section, in order to reduce employee exposure to environmental tobacco smoke to a level that will prevent anything other than insignificantly harmful effects to exposed employees, and also to eliminate the confusion and hardship that can result from enactment or enforcement of disparate local workplace smoking restrictions. Notwithstanding any other provision of this section, it is the intent of the Legislature that any area not defined as a 'place of employment' pursuant to subdivision (d) or in which the smoking of tobacco products is not regulated pursuant to subdivision (e) shall be subject to local regulation of smoking of tobacco products."

Section 6404.5 makes any violation of the prohibition set forth in subdivision (b) an infraction punishable by a fine not to exceed $100 for a first violation, $200 for a second violation within one year, and $500 for a third and subsequent violation within one year. (§ 6404.5, subd. (j).) An employer who takes specified actions to prevent smoking by nonemployees may avoid prosecution under the statute. (§ 6404.5, subd. (c).)

We are asked to determine the meaning of the phrase "enclosed space" for purposes of section 6404.5. May the owner of a bar, restaurant, or tavern avoid a violation of section 6404.5 by opening all doors and windows during the hours of employment? We conclude that a violation of the statute may not be avoided merely by taking such steps.

Preliminarily, we note that no administrative agency of the state, such as the California Occupational Safety and Health Standards Board or the Division of Occupational Safety and Health, has adopted regulations implementing section 6404.5. **Footnote No, 3** Nor are we aware of any court decision or administrative decision bearing upon what constitutes an "enclosed space" as that term is used in section 6404.5. Does such lack of prior interpretation prevent prosecution under the statute? It does not.

The Fifth Amendment of the United States Constitution provides in part: "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." The Fourteenth Amendment similarly provides that "nor shall any state deprive any person of life, liberty, or property, without due process of law. . . ." The California Constitution, article I, section 7, subdivision (a) states: "A person may not be deprived of life, liberty, or property without due process of law . . . ."

"The requirement of a reasonable degree of certainty in legislation, especially in the criminal law, is a well established element of the guarantee of due process of law." (*In re Newbern* (1960) 53 Cal.2d 786, 792.) **Footnote No, 4** "Due process requires the state to give its citizens fair notice of potentially criminal conduct." (*People* v. *Sipe* (1995) 36 Cal.App.4th 468, 480; see *Kolender* v. *Lawson* (1983) 461 U.S. 352, 357; *In re Juan C.* (1994) 28 Cal.App.4th 1093, 1102.)

Nevertheless, precise language covering every type of proscribed conduct is unnecessary. (76 Ops.Cal.Atty.Gen. 67, 70 (1993).) In *People v. Deskin* (1992) 10 Cal.App.4th 1397, 1400, the court explained:

"Although a particular statute is somewhat vague or general in its language because of difficulty in defining the subject matter with precision, it will be upheld if its meaning is reasonably ascertainable. [Citation.] Courts must view the statute from the standpoint of the reasonable person who might be subject to its terms. Thus, '[i]t is not necessary that a statute furnish detailed plans and specifications of the acts or conduct prohibited. The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding.' [Citation.]"

In *In re Angel J.* (1992) 9 Cal.App.4th 1096, 1101, the court stated: "'"Fair notice' requires only that a violation be described with a '"reasonable degree of certainty"' . . . so that 'ordinary people can understand what conduct is prohibited.' . . . .'" [Citations.]" In *People v. Taylor* (1992) 7 Cal.App.4th 677, 693, the court quoted *People v. Gibbons* (1989) 215 Cal.App.3d 1204, 1210, as follows:

"'The concept of fair notice is not intended "'to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.' [Citation.]" [Citation.] In the case of judicial construction, due process is not violated merely because the language of the statute is being applied to a particular situation for the first time. . . . Nor do due process concerns of fair warning arise where the language of the statute is not being expanded in an unforeseeable manner even though the case is one of first impression and even if dicta in prior decisions suggested a narrower application. . . .'"

In language frequently quoted, the United States Supreme Court stated in *Rose v. Locke* (1975) 423 U.S. 48, 49-50:

"It is settled that the fair-warning requirement embodied in the Due Process Clause prohibits the States from holding an individual 'criminally responsible for conduct which he could not reasonably understand to be proscribed.' [Citations.] But this prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for '[i]n most English words and phrases there lurk uncertainties.' [Citation.] Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid. [Citations.] All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." (Fn. omitted.)

In *Roth v. United States* (1957) 354 U.S. 476, 491-492, the court additionally pointed out:

". . . This Court . . . has consistently held that lack of precision is not itself offensive to the requirements of due process. '. . . [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed

conduct when measured by common understanding and practices. . . .' [Citation.]. . . .'. . . That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is not sufficient reason to hold the language too ambiguous to define a criminal offense. . . .' [Citations.]"

In *People v. Superior Court (Hartway)* (1977) 19 Cal.3d 338, 345, the court upheld the language of a statute against a charge of vagueness by looking to the dictionary for definitions of the statutory terms, noting:

". . .'"A statute will not be held void for uncertainty if any reasonable and practical construction can be given its language." It will be upheld if its terms may be made reasonably certain by reference to other sources.' [Citations.]"

In *People v. Poulin* (1972) 27 Cal.App.3d 54, 60, the Court quoted from *People v. Daniel* (1959) 168 Cal.App.2d Supp. 788, 797-798, as follows:

"'A statute is not necessarily invalid even though in its definition some matter of degree may be involved; it will not generally be held invalid if the language is sufficient to enable the attorney to explain to his client and advise what questions may be left to the determination of the jury, so that he will be able to govern himself accordingly; neither is it necessary that the words have a universally recognized meaning; that the charging words will ordinarily be held sufficient if their meaning can be fairly ascertained by references to similar statutes or other judicial determinations, or by reference to the common law, or to the dictionary, or if the words themselves had a common and generally accepted meaning; that the long continued use of words in a statute without question as to their sufficiency creates a presumption that they have come to be well understood by those to whom they apply. . . . That the courts will consider the underlying purpose of the law and although it might desire a little more certainty, as a general rule the court will uphold the validity of the statute and interpret it to the best of its ability, particularly when any attempt to make it more specific and certain, would tend to nullify its fundamental purpose. . . .'"

In *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 312, the court looked to the dictionary for definitions in upholding a statute containing a civil penalty of up to $2,500 per day for each violation, stating:

". . .[T]he rule of strict construction of penal statutes has generally been applied in this state to criminal statutes, rather than statutes which prescribe only civil monetary penalties. [Citations.] . . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . .[C]ivil statutes for the protection of the public are, generally, broadly construed in favor of that protective purpose. [Citations.] . . . ."

In *In re Christopher J.* (1980) 102 Cal.App.3d 76, the defendant claimed that he had not committed a burglary (Pen. Code, § 459) because he had not entered a "building." The court

upheld the conviction, concluding that the term "building" could be interpreted as including an attached carport that had a roof and was open on two sides.

Similarly, here, we have no doubt that an "enclosed space" for purposes of section 6404.5 includes a bar, restaurant, or tavern even when its doors and windows are open. Looking to the dictionary (see, e.g., *People v. Spencer* (1975) 52 Cal.App.3d 563, 565), we find that "enclose" ordinarily means "to close in" or "surround" and that an "enclosure" is "the separation of land from common ground by a fence or barrier" or "separation . . . of one part of a building from others." (Webster's Third New Internat. Dict. (1971) pp. 746-747.) We have examined the legislative history of section 6404.5 and find that it supports application of the statute to buildings regardless of whether the doors and windows are open.

A bar, restaurant, or tavern with walls and a roof is separated from surrounding ground when the doors and windows are open. The walls and roof make it an "enclosed space" as that term is normally understood. Although the phrase "enclosed space" has some inherent vagueness, it gives fair warning of the statute's application. The salutary purposes of section 6404.5, as a public health and employee safety measure, may not be thwarted by the mere opening of doors and windows.

We conclude that the owner of a bar, restaurant, or tavern may not allow smoking in his or her establishment merely by opening all doors and windows during the hours of employment.

\* \* \* \* \*

---

**Footnote No. 1**
All section reference are to the Labor Code unless otherwise specified.
**Footnote No. 2**
Various exclusions from the term "place of employment" are set forth in the statute. (§ 6404.5, subd. (d).)
**Footnote No. 3**
If a regulation is duly adopted, subdivision (f)(3) of section 6404.5 authorizes smoking in gaming clubs, bars, and taverns if it complies with the terms of the regulation.
**Footnote No. 4**
"Civil as well as criminal statutes must be sufficiently clear as to give a fair warning of the conduct prohibited . . . ." (*Morrison* v. *State Board of Education* (1960) 1 Cal.3d 214, 231.)

---