Filed 10/28/22  Viola v. Caruso Management CA2/4

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GINA VIOLA et al.,<br><br>  Plaintiffs and Respondents,<br><br>  v.<br><br>CARUSO MANAGEMENT COMPANY LTD. et al.,<br><br>  Defendants and Appellants. | B323596<br><br>(Los Angeles County<br>Super. Ct. No. 22STCV26403) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa A. Beaudet, Judge. Reversed.

Altshuler Berzon, Stacey Leyton and Juhyung Harold Lee; Law Office of Shakeer Rahman and Shakeer Rahman; Law Office of Matthew Strugar and Matthew Strugar for Plaintiffs and Respondents.

Nielsen Merksamer Parrinello Gross & Leoni, Sean P. Welch, David J. Lazarus, and Arthur G. Scotland; Quinn Emanuel Urquhart & Sullivan, Kathleen M. Sullivan and Derek L. Shaffer for Defendants and Appellants.

THE COURT:

In this expedited appeal, in the midst of Los Angeles's mayoral election, we reverse a preliminary injunction that would have required The Grove shopping mall—owned by mayoral candidate Rick Caruso—to allow some of Caruso's detractors to protest his candidacy there. The facts, law, and procedural posture of the case compel this result.

In *Robins v. Pruneyard Shopping Center* (1979) 23 Cal.3d 899, 910, (*Pruneyard*) our California Supreme Court concluded "that sections 2 and 3 of article I of the California Constitution protect speech and petitioning, reasonably exercised, in shopping centers even when the centers are privately owned." The court noted those who seek to exercise free speech rights on private property do not have "free rein," but are subject to reasonable time place and manner restrictions. (*Ibid.*) Similarly, when the United States Supreme Court affirmed *Pruneyard*, it reiterated that shopping mall operators could implement reasonable time, place, and manner restrictions on those seeking to exercise free speech rights on mall premises. (*PruneYard Shopping Center v. Robins* (1980) 447 U.S. 74, 83.)

In keeping with its right to do so, The Grove adopted a set of rules governing speech on its premises. Among other things, the rules required those seeking to exercise speech rights at The Grove to file applications in advance, specifying the nature of the

proposed activity, and selecting one of two free speech areas designated by The Grove in which to exercise their free speech rights. Because plaintiffs applied to march throughout the outdoor portions of the mall's common areas, something the rules plainly prohibit, The Grove denied their applications.

The plaintiffs then filed suit and moved for preliminary injunctive relief on an as-applied challenge to The Grove's rules. Importantly, for purposes of the trial court's consideration of their preliminary injunction motion, the plaintiffs stated they were not contesting the facial validity of The Grove's rules. It is undisputed plaintiffs had no right under those rules to march through the mall. Thus, The Grove's denial of plaintiffs' requests to do so could not have been an unconstitutional or discriminatory application of The Grove's rules to plaintiffs. Nor is there evidence that the Caruso mayoral campaign has been allowed to engage in any similar activity. Because there is no reasonable probability that plaintiffs could prevail on the merits, it was an abuse of discretion for the trial court to grant injunctive relief.

## FACTUAL AND PROCEDURAL BACKGROUND

Caruso owns and operates The Grove through two companies: defendants and appellants GFM, LLC and Caruso Management Company, Ltd. The Grove followed its established practice of licensing parts of its common area to rent space to the

Rick Caruso for Mayor 2022 campaign committee. In particular, in May 2022, the Caruso campaign paid to license space in the common area in the center of the mall for a press conference where City Councilmember Joe Buscaino endorsed Caruso in the presence of dozens of individuals holding Caruso campaign signs.[1]

The campaign has also paid to use a portion of the concierge stand in the lobby of the parking structure to display a "Caruso for Mayor" sign and distribute Caruso campaign lawn signs upon request. In May, a journalist spotted a woman wearing a Caruso campaign sign around her neck at the mall. On two days in June and August, two individuals associated with plaintiffs tested the response of The Grove's security. On each day, one of them carried a Caruso campaign lawn sign around the mall for about 15 minutes without being stopped; one security officer gave a thumbs up.

In July, plaintiff and respondent Gina Viola applied to have a 10-to-15-person march through the mall's outdoor areas. In a separate application, plaintiff and respondent Sim Bilal of Youth Climate Strike Los Angeles sought permission for a 30-to-50-

---

1    The trial court accepted defendants' representation that a primary election night "watch party" held at The Grove in June 2022 was a private event that occurred when the mall was closed to the public. As the trial court did not factor the June event into its analysis, we will not consider it further.

person march. Both marches were to be in opposition to Caruso's mayoral candidacy.

The applications were made pursuant to The Grove's time, place, and manner policies, titled "RULES FOR NON-COMMERCIAL USE OF COMMON AREAS IN THE GROVE SHOPPING CENTER." The rules regulate "speech or activity with a primary purpose not intended to operate, promote or advertise the Center or any tenant or occupant thereof, and/or the goods and services they provide," such as obtaining signatures, registering voters, protesting, or conducting union activity. The rules do not apply to spontaneous conversations, but they prohibit "any demonstrations that cause unsafe congestion . . . or that would otherwise result in obstruction of or undue interference with normal business operations" of the mall. Regulated activity is to be conducted as approved by the manager in two designated areas at the edge of the mall. Normally, up to seven people are allowed per approved area. The area where the Caruso campaign held its press conference, and the parking structure lobby where Caruso campaign signs were made available, are both outside the two areas designated for free speech by the rules.

Plaintiffs' applications were denied because they did not comply with the rules. Specifically, they exceeded the permitted number of people and did not select a designated area.

Furthermore, The Grove concluded the proposed activity, a march, "would impede, obstruct, and interfere with patrons and tenants." Plaintiffs were encouraged to submit new applications conforming with the rules. Plaintiffs objected to the denial as viewpoint discrimination. The Grove disagreed with that characterization, but offered to discuss with plaintiffs options to engage in expressive activities under its rules.

Plaintiffs did not engage further with The Grove. Instead, they filed suit to challenge the rules in court, facially and as applied. They sought a preliminary injunction, however, based solely on their as-applied challenge. Specifically, they moved to enjoin The Grove from interfering with their own "and the general public's expressive activity in opposition to Rick Caruso's mayoral campaign on differential terms or treatment than [those applied] to expressive activity in support of Rick Caruso's mayoral campaign."

In their motion, plaintiffs argued The Grove "provides its patrons with Caruso for mayor signs and allows them to parade through the property displaying those signs." They contended they had sought "permission to engage in speech critical of Caruso's campaign . . . on the same terms that The Grove allows private speech supportive of Caruso's campaign," and The Grove had refused to "provide even-handed treatment, instead

discriminating based on the viewpoint and content of [their] speech."

In opposition, defendants argued The Grove had rejected plaintiffs' applications to march through the mall because those applications did not comply with the rules, not because of plaintiffs' viewpoint. Further, they argued that allowing the Caruso campaign to rent space at the mall does not give rise to a viewpoint discrimination claim. Moreover, they offered evidence that, upon learning of the allegations in the complaint, security personnel had been advised to enforce The Grove's rules evenhandedly against members of the public who engaged in expressive activity. Alternatively, defendants argued that injunctive relief should be tailored to the alleged harm, suggesting that an individual may be allowed to walk with a small sign for 15 minutes and that respondents may request commercial rental space at the mall.

The trial court concluded plaintiffs were likely to succeed on their as-applied challenge based on what it perceived to be The Grove's selective enforcement of its rules. In response to defendants' objection that a ruling in plaintiffs' favor would force the mall to "host large-scale marches," the trial court concluded the proposed injunction was overbroad. At the September 22, 2022 hearing, the trial court confirmed plaintiffs would not be allowed to march through the mall. Instead, the trial court

7

encouraged the parties to agree on injunctive relief that would allow plaintiffs to engage in expressive activity similar to that of the Caruso campaign. It then worked closely with both parties on revising the proposed language line by line.

The resulting preliminary injunction, issued on September 27, 2022 in favor of plaintiffs "and members of the public," consists of two parts. First, it prohibits defendants from interfering with one stationary protest lasting up to an hour, to be held on a Thursday at 3:00 p.m. between October 6 and November 8, in the area between the angel statue and the fountain at The Grove. The protest is limited to 30 participants; signs, chanting, and leafletting are allowed, but amplifiers are not permitted. Defendants may use velvet roping to separate the protest area from walkways. Second, beginning on October 6, defendants are prohibited from interfering with any single individual displaying an anti-Caruso paper sign (24" x 36") for up to an hour a day.

Defendants participated in the crafting of injunctive relief under protest, "reserving all rights and objections"; plaintiffs' counsel represented that his clients were more interested in the first part of the injunction than in the second.

This appeal followed. We granted appellants' petition for writ of supersedeas, along with the parties' stipulation to

expedite briefing. Due to the urgency created by the ongoing election, we scheduled the hearing on a special calendar.

## DISCUSSION

### A. *Applicable Legal Standards*

#### 1. California's Protection of Free Expression in Malls

California is one of a handful of states that deems the common areas of a privately owned mall to be a public forum for free expression, and the law in this area has developed on a case-by-case basis. (See generally *Fashion Valley Mall, LLC v. National Labor Relations Bd.* (2007) 42 Cal.4th 850, 875-876 (dis. opn. of Chin, J.) (*Fashion Valley*).) Malls are allowed to "enforce reasonable regulations of the time, place and manner of such free expression to assure that these activities do not interfere with the normal business operations" or ""markedly dilute [a mall owner's] property rights." [Citation.]'" (*Id.* at pp. 870, 863 (maj. opn.).) Although stationary protests have been permitted in common areas of malls in some circumstances (see e.g., *Best Friends Animal Society v. Macerich Westside Pavilion Property LLC* (2011) 193 Cal.App.4th 168, 174-175 (*Best Friends*) [finding mall must permit protest in common area in range of a particular store so long as it did not substantially interfere with normal business operations]), no private mall has been required to host a march of protestors in its common areas.

## 2. Standards for Preliminary Injunctive Relief

"[T]he general purpose of a preliminary injunction is to preserve the status quo pending a final adjudication of the claims on the merits." (*O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1472.) A preliminary injunction that changes the status quo is permitted only in cases where there is a clear right to the relief. (*Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618, 625 (*Shoemaker*).)

When ruling on a motion for preliminary injunction, trial courts weigh two factors: "'the likelihood that the plaintiff will prevail on the merits at trial'" and "'the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued. [Citations.]' [Citations.] The trial court's evaluation and weighing of the two interrelated factors is reviewed for an abuse of discretion." (*Best Friends, supra,* 193 Cal.App.4th at p. 174.) However, "[a] trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim." (*Butt v. State of California* (1992) 4 Cal.4th 668, 678.) "Moreover, a judicial remedy must be tailored to the harm at issue. [Citations.] A court should always strive for the least disruptive remedy adequate to its legitimate task." (*Id.* at pp. 695–696.)

### 3. Facial and As-Applied Challenges

A facial challenge to a challenged law, regulation, or rule "'considers only the text of the [rule or] measure itself, not its application to the particular circumstances of an individual.' [Citation.] In contrast, an as-applied challenge 'contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the statute or ordinance [or rule] has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right. [Citations].'" (*People v. Superior Court (J.C. Penney Corp., Inc.)* (2019) 34 Cal.App.5th 376, 387.) "To prevail on such a contention, the party asserting an as applied challenge must establish a pattern of impermissible application of the statute, rule or policy." (*Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150, 167.) "'[C]lassifying a lawsuit as facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding "breadth of the remedy," but it does not speak at all to the substantive rule of law necessary to establish a constitutional violation.'" (*People v. Superior Court (J.C. Penney Corp., Inc., supra,* 34 Cal.App.5th at p. 405 fn. 17.)

11

### B. Preliminary Injunctive Relief Is Unwarranted

Respondents' as-applied challenge is based on their claim that The Grove's unequal application of its policies discriminated against them based on their viewpoint as Caruso's opponents. "Discretionary determinations by a public [or other] official of which viewpoints will be heard and which will not be heard encourage censorship and discrimination, and are constitutionally suspect." (*In re Juan C.* (1994) 28 Cal.App.4th 1093, 1099.) Respondents have not identified any California case, and we have found none, finding that a preliminary injunction should issue because a facially valid statute or rule was applied to restrict speech in a viewpoint-discriminatory way. Looking to federal law, in order to establish such an as-applied claim for discriminatory selective enforcement, respondents would have to show that The Grove responded differently, depending on the speaker's viewpoint, to the *same or similar types of expressive activities.* (See *McGuire v. Reilly* (1st Cir. 2004) 386 F.3d 45, 62 [describing an as-applied First Amendment viewpoint discrimination claim as "a claim that the government enforces the law against persons of one viewpoint who violate the statute while not enforcing the law against *similarly situated persons* of the opposing viewpoint who also violate the statute" (emphasis added)]; *Mahoney v. District of Columbia* (D.D.C. 2009) 662 F.Supp.2d 74, 88 [finding selective enforcement claim

12

regarding application of defacement statute failed where plaintiff asked court to compare "dissimilar incidents" of chalking public streets]; *Frederick Douglass Foundation, Inc. v. District of Columbia* (D.D.C. 2021) 531 F.Supp.3d 316, 333-335 (*Frederick Douglass Foundation*) [denying request for preliminary injunction on claim for selective enforcement of defacement statute given lack of "materially similar circumstances" between plaintiffs' "Defund the Police" street mural and the "Black Lives Matter" mural that city allowed]; cf. *Hoye v. City of Oakland* (9th Cir. 2011) 653 F.3d 835, 850-852 [finding city enforced its facially valid "Bubble Ordinance" around abortion clinics in an impermissibly content-based manner by permitting individuals to approach another to offer help in accessing an abortion but forbidding approaching to discourage abortion].) Here, respondents have not shown they were prohibited from engaging in speech activities similar to those of the Caruso campaign.

Before the trial court, respondents exaggerated and misrepresented the campaign's activities, claiming The Grove allowed Caruso supporters to "march" or "parade" through The Grove, "displaying their Caruso for Mayor signs." Yet, there is no evidence The Grove has allowed pro-Caruso marches or parades of any size, let alone ones involving anywhere from 10 to 50 participants at a time, as respondents sought to do. The trial court correctly concluded the denial of the applications to march

13

was proper under The Grove's time, place and manner policies, whose validity respondents did not contest for purposes of their as-applied challenge. Given that respondents had applied for and were denied permission to engage in an activity no court has found they had a right to engage in, and absent evidence the Caruso campaign had been permitted to engage in the same type of activity, respondents have not demonstrated The Grove abridged their free speech rights or treated them differently than the Caruso campaign based on their viewpoint. As such, the trial court should have concluded respondents were unlikely to prevail on their as-applied challenge and denied preliminary injunctive relief.

Here, the trial court essentially ordered that a large-scale protest take place at the center of The Grove, even though it does not comply with The Grove's policies and is not sanctioned under any California authority. Apparently, the protest is supposed to be a rough equivalent to the Caruso campaign's May 2022 press conference. The trial court had discretion to tailor relief to redress harm to respondents. It did not, however, have license to order preliminary injunctive relief that went far astray from the expressive activity requested by respondents, the only activity for which The Grove denied permission. Where California courts have granted injunctive relief to protect speech activities in malls, they have limited the relief to barring enforcement of a

14

particular rule or a set of rules against the specific expressive activity plaintiffs had been denied the right to engage in. (See, e.g., *Pruneyard, supra,* 23 Cal.3d at p. 911 [reversing judgment denying plaintiffs' request to enjoin shopping center from preventing access to solicit signatures for a petition]; *Best Friends, supra,* 193 Cal.App.4th at p. 186 [holding it was error to deny plaintiff's requested preliminary injunction enjoining mall from preventing plaintiff "from protesting within aural and visual range" of a pet shop unless the mall proved any such protest would interfere with its normal business operations]; accord *Lela v. Board of Trustees of Community College District No. 516* (N.D. Ill., Jan. 27, 2015, No. 14 CV 5417) 2015 WL 351243 [enjoining a community college from denying access to the plaintiffs for purposes of leafletting, the activity for which they had applied].) Respondents have cited no case where a court devised a remedy to allow a plaintiff to engage in a speech activity different from the one in which the plaintiff had attempted to engage. Because the trial court's fashioning of the injunction to order a stationary protest was unprecedented given the circumstances here and would upset the status quo, the preliminary injunction should not have been granted. (*Shoemaker, supra,* 37 Cal.App.4th at p. 625.)

The injunctive relief permitting individuals to display anti-Caruso signs for up to one hour a day was similarly unjustified

15

based on the record to date. The evidence indicates the Caruso campaign gives out lawn signs on demand, and that on three separate occasions over the span of three months, three individuals have walked around the mall with Caruso signs without being stopped by security. Because respondents did not apply to leaflet or to display signs under The Grove's rules, it is impossible to say whether they would have been allowed to do so. Moreover, respondents did not test whether The Grove would permit people to carry anti-Caruso signs. Even if they had, "simply '[p]ointing to a handful of instances of allegedly inconsistent enforcement is not enough to justify declaring [a] statute [or rule] unconstitutional as applied to conduct the parties do not dispute falls under its purview.' [Citation.] For in such circumstances, there is neither a 'pattern' of enforcement activity based on content or viewpoint, nor a showing of government [or mall owner] 'intent[ ]' underlying the disparate application.'" (*Frederick Douglass Foundation, supra*, 531 F.Supp.3d at p. 331; see *Baluyut v. Superior Court* (1996) 12 Cal.4th 826, 832 ["Unequal treatment which results simply from laxity of enforcement or which reflects nonarbitrary selective enforcement of a statute does not deny equal protection and is not constitutionally prohibited discriminatory enforcement"].) Ironically, respondents' counsel represented that his clients are not particularly interested in a remedy for the perceived problem

of selective enforcement concerning displays of anti-Caruso signs. Thus, paradoxically, in the second part of the injunction the trial court fashioned a remedy to allow unspecified individuals to engage in an activity respondents had neither sought, nor were eager to engage in themselves.

In short, given that respondents' applications were properly denied by The Grove, and respondents therefore are unlikely to succeed on the merits, the trial court abused its discretion by granting the preliminary injunction.[2]

## DISPOSITION

The order granting respondents' motion for a preliminary injunction is reversed. Appellants are entitled to their costs on appeal.

COLLINS, Acting P.J.        CURREY, J.        STONE, J.[**]

---

[2]    It is unnecessary to address the parties' numerous additional arguments and we express no opinion on the merits of plaintiffs' facial challenge to The Grove's policies or defendants' contention that the Caruso campaign's activities are not subject to those same policies.

[**]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.